# Exhibit  A

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NATIONAL BOARD OF MEDICAL EXAMINERS *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>OPTIMA UNIVERSITY LLC *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 09-1043-JDB<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF RUSSELL KINARD

I, Russell Kinard, hereby state as follows:

1.     I am a United States Marshal working out of the United States Marshal's office in Jackson, Tennessee, associated with the United States District Court for the Western District of Tennessee, Eastern Division.  Unless otherwise noted, I have personal knowledge of the facts stated herein.

2.     I was one of two Marshals charged with executing this Court's Order in this cause dated February 23, 2009, allowing the Plaintiffs to obtain testing and training material, both electronic and paper, and requiring the Defendant Optima University to provide password information to allow Plaintiffs access to secured electronic file service.

3.     I accompanied one of Plaintiff's attorneys, Russell E. Reviere, along with his paralegal, Rhonda Gail Van den Bosch, and two individuals with LCG Consultants whose job was to obtain copies of specified electronic data.

4.      We arrived at the location of the Defendant, Optima University, on Highway 22 in McKenzie, Tennessee, and after a long period of time, Eihab Suliman arrived. I provided him a signed copy of this Court's Order and explained to him that he was required by Court Order to cooperate with Plaintiffs' representatives in obtaining the information detailed in the Order and that he was to provide necessary passwords to allow access to assist in executing their tasks in compliance with the Order of this Court.

5.      In my presence, one of the attorneys for the Plaintiffs, Russell E. Reviere, also explained the Court's Order to Mr. Suliman, who appeared to fully comprehend everything that was being told to him. I also observed Plaintiffs' attorney speaking on the telephone with a man who had been identified by Mr. Suliman as an attorney in New Jersey who Mr. Suliman had called concerning this Court's Order.

6.      I heard Mr. Suliman initially say that he would not speak to anyone on advice of his attorney and would not provide the necessary passwords. After it was further explained to him by the attorney for the Plaintiffs that he was required by the Order of this Court to provide password information, Mr. Suliman said that he had "temporary amnesia". Plaintiffs' attorney had further discussion with Mr. Suliman and with his attorney, and Mr. Suliman subsequently purported to attempt to log into what had been identified as an encrypted file server located in his office. He was unsuccessful and again claimed that he did not know the passwords. I personally observed that he tried two times and entered a different number of characters on each occasion leaving me to believe that he was not making a serious effort to try and log in; likewise, he did not provide me or Plaintiffs' lawyers with any passwords for accessing

2

Optima's password-protected electronic testing materials, as required by this Court's Order.

7.     Later, after claiming that he did not know where any other file servers were located, the attorney for the Plaintiffs and the two individuals doing data collection located a room on a lower floor that appeared to have wiring running to it and which appeared to be a possible location for file servers. Mr. Suliman was asked to obtain the key to this room.  He left and then returned with a key to this room, where at least three file servers were located. Again, Mr. Suliman claimed to not know the password information to allow these individuals to gain access to the contents of the file servers even though he later said that he, personally, is the one who actually installed those file servers  and who performs maintenance on all the computers, and denied that he had any employee on site who carried out such tasks or worked on technology matters for him.

8.     From what I observed, Mr. Suliman's refusal to provide these passwords and otherwise to cooperate with the Plaintiffs' and their computer consultants resulted in the Plaintiffs being unable to obtain access to all possible locations for materials that were called for in the Court's Order.   In addition, Plaintiffs were forced to spend significantly more time and effort to copy the contents of entire file servers and/or computer hard drives so that data could be preserved for safe keeping and later inspection.  The two United States Marshals remained on site with Plaintiffs' attorney and the two individuals charged with collecting and copying the data until approximately 11:30 p.m.

9.      It is my opinion from speaking with and observing Mr. Suliman that he
was not cooperating fully or reasonably with the Plaintiff's efforts to obtain copies of the
Optima test preparation materials, as called for in the Court's Order.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2009.

_____

Russell Kinard

4

# Exhibit  B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NATIONAL BOARD OF MEDICAL<br>    EXAMINERS *et al.*,<br><br>        **Plaintiffs,**<br><br>v.<br><br>OPTIMA UNIVERSITY LLC *et al.*,<br><br>        **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 09-1043-JDB**<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID JIMENEZ

I, David Jimenez, hereby state as follows:

1.      My name is David Jimenez.  I am more than twenty-one (21) years of age and, unless otherwise noted, I have personal knowledge of the facts stated herein.

2.      I am an employee of Lateral Consulting Group.  I was one of the computer forensic experts who assisted Plaintiffs in obtaining electronic data from Defendants at the premises of Optima University in McKenzie, Tennessee, on February 24, 2009, in accordance with the Court's Order of February 23, 2009.

3.      We were tasked with locating and copying test questions and course materials on Defendants' premises.

4.      We arrived at the premises at approximately 3:30 p.m.  Upon arriving, we made a quick survey of what we were dealing with.  We saw a lot of what appeared to be examination rooms, with about five computers in each room.  I estimate that I saw 10-12 such rooms, with a total of 60 or more computers.  Most, if not all, of the stations

seemed to contain individuals' personal items. We also saw a number of students on the premises.

5.    We located what appeared to be the office of Defendant, Eihab Suliman. There was a computer on the desk and one or two extra computers that were non-operational. There were many hard drives and hundreds of CDs in his office. The CDs appeared to include copies of lectures. We made copies of a couple of these CDs.

6.    We imaged external hard drives on Mr. Suliman's computer and on the disconnected computers located in a back room to the office.

7.    Almost all of the test preparation and related materials that we were able to locate at Optima's premises were available exclusively in an electronic (rather than paper) format.

8.    Some of the course materials that were available electronically, apparently for the use of students in the course, were accessible through an internet site: https://usmle.optima. The site appears to be hosted internally within Optima's network (but apparently not on a server that was located on site).

9.    We attempted to use the tools available to us to determine where the off-site server was located for this internet site. The site shut down, however, while we were running our diagnostic tests. We do not know who shut it down or why it became inaccessible, but it is certainly something that could have been done remotely. Mr. Suliman had not yet arrived at the premises when the site was shut down, but I believe that he had been called and notified that we were on the premises by this time.

10.    A person who I understood to be Mr. Suliman eventually arrived at the Optima premises while we were on site. He was asked by Plaintiffs' counsel where the

server was that launched and hosted the questions that were provided to Optima's customers on computers at the Optima premises. He indicated that the server was located overseas. He did not say where.

11.    Based on the number of computers located on site (60 or more), I expected there to be one or more servers on site.

12.    We eventually found three servers on site. All of the servers were password protected. If we had the passwords to the servers, we would have been able to see the data on the server in its natural form. Without passwords, we had to go in through the "back door" to see the data on the server in its raw form. Two of the servers did not appear to have the type of data we were looking for. The third server appeared to route internet traffic, and may have had the type of data we were looking for. The Defendant would not provide the password for this server. We therefore had to image the entire server, because we did not have enough time to look at the data in its raw form and decide if any of it was the type of data we were looking for. We also decided to image certain of the hard drives of the computers that seemed typical of the computers used by students in the course.

13.    We tried to access Mr. Suliman's desk top computer. It also was encrypted. Mr. Suliman said that he did not know the password. We had to image the entire hard drive, because we could not determine what data was contained on the server.

14.    We left the Optima premises at approximately 11:30 p.m.

15.    Because Optima did not give us the necessary passwords or otherwise cooperate in our efforts to retrieve Optima's course materials in accordance with the

3

Court's order, we do not know whether we retrieved a complete set of Optima materials. It is unlikely that we did.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2009.

David Jimenez