UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| NATIONAL BOARD OF MEDICAL EXAMINERS *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>OPTIMA UNIVERSITY LLC *et al.*,<br><br>Defendants. | Civil Action No. 09-1043-JDB |

PLAINTIFFS' BRIEF REGARDING THE
INAPPLICABILITY OF THE BANKRUPTCY CODE'S
AUTOMATIC STAY TO THE PENDING CONTEMPT MOTION

As requested by the Court, plaintiffs the National Board of Medical Examiners and the Federation of State Medical Boards respectfully submit this brief to address the impact of the defendants' recently filed bankruptcy petitions on the contempt motion that is pending before the Court. Specifically, this brief addresses whether the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), applies to the plaintiffs' pending motion to have the defendants held in contempt for failing to comply with the impoundment Order entered by the Court on February 23, 2009.

The answer is no. As shown below, the pending contempt proceeding is not subject to the Bankruptcy Code's automatic stay.[1]

---

[1] "The court in which the litigation claimed to be stayed is pending has jurisdiction to determine ... whether the proceeding before it is subject to the automatic stay." *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986).

85047282.1

I.  **PROCEDURAL HISTORY**

On February 23, 2009, the Court entered an Order granting the plaintiffs' request for the impoundment of test materials from the defendants which infringe upon the plaintiffs' copyrights in the United States Medical Licensing Examination. The Order also instructed defendants not to destroy or transfer any records.

Defendants did not comply with the Court's Order. Accordingly, on March 4, 2009, the plaintiffs filed an Emergency Motion for an Order Requiring Defendants to Show Cause Why They Should Not be Held in Contempt for Violating the Court's TRO and Impoundment Order. The Court granted plaintiffs' motion and ordered defendants to appear before the Court on March 18, 2009, to "show cause why they should not be held in contempt of Court for violating the Court's Order of February 23, 2009."

At the request of defendants' counsel, the March 18th hearing was adjourned. The Court re-scheduled the show cause hearing for March 27, 2009. *See* Notice of Resetting (March 18, 2009). A few days after obtaining this adjournment, the named defendants filed bankruptcy petitions. *See In re Eihab Mohamed Suliman*, No. 09-11213 (Bankr. W.D. Tenn.) (filed March 23, 2009); *and In re Optima University*, No. 09-11212 (Bankr. Ct. W.D. Tenn.) (filed March 23, 2009). Neither bankruptcy petition disclosed to the bankruptcy court the pendency of the present lawsuit, despite the fact that the bankruptcy court expressly requires debtors to list "all suits ... to which the debtor is ... a party...." *See id.*, Statement of Affairs Form, at ¶ 4.

The issue addressed in this brief is whether the filing of those bankruptcy petitions divests this Court of its ability to decide plaintiffs' previously filed contempt motion. It does not.

## II.    THE BANKRUPTCY CODE'S AUTOMATIC STAY AND EXCEPTIONS TO THE STAY

Under 11 U.S.C. § 362(a), proceedings against a debtor are generally stayed upon the filing of a bankruptcy petition. "[T]he automatic stay is not all-encompassing," however. *In re Commerce Oil Co.* 847 F.2d 291, 295 (6th Cir. 1988). For example, there is an express exception for criminal proceedings. *See* 11 U.S.C. § 362(b)(1). There is also an express exception for actions taken to enforce the regulatory authority of a "governmental" entity. *See* 11 U.S.C. § 362(b)(4) (exempting from the automatic stay "an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power"). And there is a generally recognized exception for contempt proceedings. *See, e.g., In re Morgan*, 109 B.R. 297, 299 (Bankr. W.D. Tenn. 1989) ("A contempt order issued to uphold the dignity of the court can withstand a bankruptcy filing and is not violative of the automatic stay.") (citations omitted).

## III.   THE PENDING CONTEMPT PROCEEDING FALLS WITHIN THE SCOPE OF ONE OR MORE OF THESE EXCEPTIONS

Courts have recognized a general exception to the automatic stay for contempt proceedings that seek to ensure compliance with previously entered court orders.[2] This exception has been explained as follows:

> It is within this court's inherent power to take whatever steps [are] necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel

---

[2] "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the judiciary has a means to vindicate its own autonomy...." *Young v. United States*, 481 U.S. 787, 796 (1987).

> compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court."

*U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156 (D. Kan. 1988).[3]

This exception was recently relied upon in a case directly analogous to the present case. In *Summit Financial Resources, L.P. v. Walthers Oil Co.*, the court granted a preliminary injunction on January 2, 2008; the defendants violated the terms of the injunction, prompting the plaintiffs to file a Motion for Emergency Ex Parte Order to Show Cause Why Defendants Should Not be Held in Contempt; the court ordered defendants to show cause why they should not be held in contempt and scheduled a hearing for January 15, 2008; the hearing was re-scheduled to January 17, 2008, at the request of the defendants' counsel; and, on January 16, 2008, defendants initiated bankruptcy proceedings. *See* 2008 U.S. Dist. LEXIS 4086, ** 1-4 (D. Utah 2008) (copy attached at Exhibit A). This is virtually identical to the procedural history here -- even down to the re-scheduling of the show cause hearing at the request of defense counsel, followed by the filing of bankruptcy proceedings prior to the re-scheduled hearing date. And, as here, the court in *Summit* concluded that it had to address "the impact, if any, of Defendants' bankruptcy" before it could decide the contempt motion. *Id.* at * 4. The court held that the automatic stay did not apply, because "the automatic stay 'does not bar

---

[3] *See also In re Lowery*, 292 B.R. 645, 649-51 (Bankr. E.D. Mo. 2003) ("Congress did not intend to strip non-bankruptcy courts of their inherent authority to enforce their own orders by allowing parties to escape the consequences of willfully disobeying orders by filing a petition for relief under the Bankruptcy Code"); *In re Dunham*, 175 B.R. 615, 617 (Bankr. E.D. Va. 1994) ("A contempt judgment entered to uphold the dignity of the court does not violate the automatic stay"); *NLRB v. Sawulski*, 158 B.R. 971, 975-77 (E.D. Mich. 1993); *SEC v. Bilzerian*, 131 F. Supp.2d 10, 15 (D.D.C . 2001).

orders to show cause or findings of contempt when necessary to uphold the dignity of a court order.'" *Id.* (quoting *Am. Online, Inc. v. CN Products*, 272 B.R. 879, 881 (E.D. Va. 2002)). The Court then held the defendants in contempt. The identical result is warranted here.

The pending contempt proceeding also fits comfortably within the Bankruptcy Code's automatic stay exception for proceedings that involve the enforcement of police or regulatory authority by a governmental unit. A contempt proceeding seeks to protect the integrity of a court order through the imposition of sanctions. It is thus analogous to a proceeding that seeks judicial sanctions for a party's non-compliance with a court's rules. Numerous courts have held that a proceeding which seeks sanctions for the violation of court rules falls within the scope of the automatic stay exception provided for under 11 U.S.C. § 362(b)(4). *See, e.g., In re Berg*, 230 F.3d 1165, 1167-68 (9th Cir. 2000) ("a claimant may proceed to collect attorneys' fees imposed as a sanction for the debtor's improper conduct in litigation without regard to the automatic stay"); *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) ("[w]e agree that a proceeding to impose sanctions under Rule 11 is exempt from the automatic stay, pursuant to 11 U.S.C. § 362(b)(4), which exempts actions brought pursuant to governmental police or regulatory powers…. The Rule 11 sanction is meted out by a governmental unit, the court, even though typically sought by a private individual or organization…. A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy."). The reasoning of these cases is equally applicable in the context of a contempt motion that seeks sanctions for violation of a court order (as opposed to a court's rules).

Finally, the pending contempt motion also falls within the scope of the Bankruptcy Code's exception for criminal proceedings. The contempt motion can be characterized as criminal in nature, insofar as it has a punitive element and seeks to "vindicate the authority of the court." *Int'l Union UMW v. Bagwell*, 512 U.S. 821, 827 (1994). This triggers the exception to the automatic stay provision that is found in 11 U.S.C. § 362(b)(1). *See, e.g., United States v. Henry*, 2008 U.S. Dist. LEXIS 50892, **7-14 (W.D. Va. 2008) (holding that the Bankruptcy Code's automatic stay did not apply to a previously filed "motion for sanctions [for deleting records] and petition to show cause" because -- although the motion was filed in a civil case and sought "recovery of attorneys' fees and expert costs," as here -- the contempt proceeding was effectively criminal in nature and thus was "exempt from the automatic stay under 11 U.S.C. § 362(b)(1)") (attached as Exhibit B).

## CONCLUSION

The Bankruptcy Code's automatic stay does not apply to the pending contempt motion. Defendants can and should be held in contempt for violating the Court's Order of February 23, 2009. The violations have been egregious and reflect an ongoing disdain for the authority of this Court, the intellectual property rights of the plaintiffs, and the integrity of the licensing process for new physicians.

Respectfully submitted,


/s/ Russell E. Reviere
Russell E. Reviere
Rainey, Kizer, Reviere & Bell, P.L.C.
105 Highland Avenue South
P.O. Box 1147
Jackson, TN 38301
(731) 423-2414
Fax: (731) 426-8111
rreviere@raineykizer.com

Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, NW
Washington, DC 20004-2623
(202) 662-0200
Fax: (202) 662-4643
rburgoyne@fulbright.com
cmew@fulbright.com

*Counsel for Plaintiffs National Board of Medical Examiners and Federation of State Medical Boards*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of this pleading or document was served upon the following via U.S. Mail, postage prepaid, on April 15, 2009 (with a courtesy copy of this pleading sent by email to the email addresses shown below):

James H. Bradberry
James H. Bradberry and Associates
P.O. Box 789
Dresden, TN  38225
Email:  jbradberryesq@citlink.net

Steven Lee Lefkovitz
Lefkovitz & Lefkovitz
618 Church Street
#410
Nashville, TN  37219
Email:  slefkovitz@lefkovitz.com
*(Defendants' bankruptcy counsel)*

/s/  Russell E. Reviere

85047282.1

# Exhibit A



LEXSEE

SUMMIT FINANCIAL RESOURCES, L.P., a Hawaii limited partnership, Plaintiff, vs. WALTHERS OIL COMPANY, a Kansas corporation, WALTHERS INC., a Kansas corporation, DAVID WALTHERS, an individual, and MARJORIE WALTHERS, an individual, Defendants.

Case No. 2:07-CV-949 TS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

2008 U.S. Dist. LEXIS 4086

January 17, 2008, Decided
January 18, 2008, Filed

**COUNSEL:** [*1] For Summit Financial Resources, a Hawaii limited partnership, Plaintiff: Burke R. Gappmayer, John A. Beckstead, Katherine Norman, Robert G. Wing, LEAD ATTORNEYS, HOLLAND & HART (UT), SALT LAKE CITY, UT.

For Walthers Oil Company, a Kansas corporation, Walthers, a Kansas corporation, David Walthers, an individual, Marjorie Walthers, an individual, Defendants: Danny C. Kelly, LEAD ATTORNEY, STOEL RIVES (UT), SALT LAKE CITY, UT; Michael P. Alley, LEAD ATTORNEY, CLARK MIZE & LINVILLE CHARTERED, SALINA, KS.

**JUDGES:** TED STEWART, United States District Judge.

**OPINION BY:** TED STEWART

**OPINION**

MEMORANDUM DECISION AND ORDER FINDING DEFENDANT DAVID WALTHERS IN CONTEMPT AND IMPOSING SANCTIONS

This matter came before the Court for an Order to Show Cause Hearing on January 17, 2008. Defendant David Walthers failed to appear at this hearing. As a result of his failure to appear, the Court will hold Mr. Walthers in civil contempt and will order him to appear before the Court for an Order to Show Cause Hearing.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 2, 2008, the Court held a hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. [1] Defendants did not appear at the hearing or oppose the Motion [*2] in any way. The Court granted the Motion and entered a Preliminary Injunction that same day. [2] The Preliminary Injunction states, among other things, that Defendants "are prohibited from directly or indirectly interfering with Summit's efforts to collect the Accounts and/or proceeds from the sale or other disposition of inventory of Walthers Oil and Walthers Inc." [3] and "are prohibited from having any communications, directly or indirectly, with any account debtor of Walthers Oil or Walthers Inc. concerning payment of Accounts except to instruct the account debtor to make payment to Summit and to direct all questions concerning payment of Accounts to Summit." [4]

 1 Docket No. 16.
 2 Docket Nos. 14 and 15.
 3 Docket No. 15 at P 4.
 4 Id.

On January 7, 2008, Plaintiff filed a Motion for

Emergency Ex Parte Order to Show Cause Why Defendants Should not be Held in Contempt. [5] In that Motion, Plaintiff alleged that Defendant David Walthers had violated the Preliminary Injunction by contacting account debtors, advising the account debtors that the Preliminary Injunction is not valid or binding in Kansas, instructing the account debtors not to talk to or provide information to Summit, instructing them not [*3] to pay Summit, and instructing account debtors to pay vendors of Walthers directly rather than paying accounts owing to Summit. The Court granted the Motion and issued an Order to Show Cause. [6] The Order to Show Cause ordered that Defendant David Walthers appear before the Court to show cause why he and other Defendants should not be held in contempt or other sanctions awarded for allegedly violating the Preliminary Injunction. [7] Defendants' attorney accepted service of the Order to Show Cause on behalf of Defendants. [8]

  5 Docket No. 18.
  6 Docket No. 25.
  7 *Id.*
  8 Docket No. 28.

The Court scheduled a hearing on the Order to Show Cause on January 17, 2008, at 2:00 p.m. [9] On January 16, 2008, Defendant filed Notice of Bankruptcy Filings. [10] These filings indicated that Defendants David Walthers, Walthers, Inc., and Walthers Oil Company, Inc. had all filed for bankruptcy in Kansas.

  9 Docket No. 26. The Court had originally scheduled the hearing for January 15, 2008, at 10:00 a.m., but moved the hearing at the request of Defendants' counsel.
  10 Docket No. 32.

The Court held the hearing on the Order to Show Cause, as scheduled, on January 17, 2008. Defendant David Walthers did not appear at the hearing [*4] as had been ordered by the Court.

II. CONTEMPT FINDINGS

Before the Court addresses whether Defendant David Walthers should be held in contempt, the Court must first address the impact, if any, of Defendants' bankruptcy filings on this Court's ability to hold Mr. Walthers in contempt.

*11 U.S.C. § 362(a)(1)* provides that the filing of a bankruptcy petition stays "the commencement or continuation . . . of a judicial . . . proceeding against the debtor . . . ." While this provision appears to stay this matter, a number of courts have held that the automatic stay "does not bar orders to show cause or findings of contempt when necessary to uphold the dignity of a court order." [11] The District of Kansas, in *US Sprint Communications Co. v. Buscher*, [12] aptly stated the reasoning behind this exception to the automatic stay.

> It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders [*5] could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in blatant disregard of the powers of the court. [13]

  11 *Am. Online, Inc. v. CN Prods., Inc.*, 272 B.R. 879, 881 & n.4 (E.D. Va. 2002) (collecting cases).
  12 **89 B.R. 154 (D. Kan. 1988)**.
  13 *Id. at 156*.

The Court finds this reasoning persuasive here. The Court has the authority to ensure that persons comply with its orders. [14] Defendant Walthers cannot disobey the Court's order to appear in a contempt proceeding in this Court based on his bankruptcy filings. "[T]he bankruptcy process cannot be invoked to immunize contumacious behavior." [15] The Court must be able to use civil contempt proceedings in order to uphold the dignity of the Court. [16] The Court finds that the contempt order set forth below is necessary to uphold the dignity of the Court and to prevent Mr. Walthers from disobeying future Court orders. Thus, the Court has the authority to hold Walthers in civil contempt and to impose appropriate sanctions.

  14 *S.E.C. v. Bilzerian*, 131 F.Supp. 2d 10, 15 (D. D.C. 2001) ("The Court has inherent power to

ensure compliance [*6] with its orders.").

15  Am. Online, Inc., 272 B.R. at 881.

16  See **US Sprint, 89 B.R. at 156**. See also N.L.R.B. v. Sawulski, 158 B.R. 971, 975 (E.D. Mich. 1993) ("Only contempt orders to uphold the dignity of the court are excepted from the automatic stay.").

"[I]n the civil contempt context, a plaintiff must prove liability by clear and convincing evidence." [17] Plaintiff "'has the burden of proving, by clear and convincing evidence, (1) that a valid court order existed, (2) that the defendant[s] had knowledge of the order, and (3) that the defendant[s] disobeyed the order." [18] "The contemnor's disobedience need not be 'willful' to constitute civil contempt. Indeed, a district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." [19]

17  F.T.C. v. Kuykendall, 371 F.3d 745, 756 (10th Cir. 2004).

18  Id. at 756-57 (quoting Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1315 (10th Cir. 1998)).

19  Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. Partnership, 95 F.Supp. 2d 1252, 1256 (D. Utah 2000) (citation omitted).

The Court makes the following findings by clear and convincing [*7] evidence. A valid court order existed here. On January 8, 2008, the Court issued an Order to Show Cause which directed Defendant Walthers to appear before this Court. [20] Defendants clearly had knowledge of that Order. Defendants' attorney accepted service of the Order to Show Cause on behalf of Defendants. [21] Defendant David Walthers disobeyed that Order. The Order to Show Cause clearly stated that Mr. Walthers was to appear before the Court to show why he should not be held in contempt. Mr. Walthers did not appear at the hearing and provided no valid excuse for not appearing at the hearing. The Court finds that the appropriate relief in this civil contempt proceeding is for Mr. Walthers to present himself to the Court for a hearing on the Order to Show Cause to determine whether he is in violation of the Preliminary Injunction and whether he should be held in civil contempt for those alleged violations..

20  Docket No. 25.
21  Docket No. 28.

Having found by clear and convincing evidence that Walthers is in contempt of this Court's order, the Court will order him to appear before the Court for an Order to Show Cause hearing to determine whether he is in violation of the Preliminary Injunction [*8] and whether he should be held in civil contempt for those alleged violations.

III. ORDER

Based on Defendant David Walthers contempt, it is hereby

ORDERED that Walthers appear before the Court on Wednesday January 23, 2008, at 10:30 a.m. for an Order to Show Cause Hearing.

DATED January 17, 2008.

BY THE COURT:

/s/ Ted Stewart

TED STEWART

United States District Judge

# Exhibit B



LEXSEE

UNITED STATES OF AMERICA et al., Plaintiffs, v. JOHN CROCKETT HENRY et al., Defendants.

Civil Action No. 7:08mc003

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA, ROANOKE DIVISION

2008 U.S. Dist. LEXIS 50892; 59 Collier Bankr. Cas. 2d (MB) 1820

June 30, 2008, Decided
July 1, 2008, Filed

**COUNSEL:** [*1] For United States Of America, Plaintiff: Anthony Paul Giorno, Julie C. Dudley, Thomas Jack Bondurant, Jr., LEAD ATTORNEYS, UNITED STATES ATTORNEYS OFFICE, ROANOKE, VA; Daniel Yi, Julie C. Dudley, Lori K. Wagner, LEAD ATTORNEYS, UNITED STATES DEPARTMENT OF JUSTICE, WASHINGTON, DC.

For Annette Reddick, Tasha Reddick, Tiese Mitchell, J.M., an infant, by his next friend, Tiese Mitchell, J. M., an infant, by her next friend, Tiese Mitchell, Crystal Lewis, J.J., an infant, by his next friend, Crystal Lewis, Arlene Carter, R.C., an infant, by her next friend, Arlene Carter, Z.C., an infant, by her next friend, Arlene Carter, Plaintiffs: Anthony F. Troy, Kevin Wayne Mottley, LEAD ATTORNEYS, TROUTMAN SANDERS LLP, RICHMOND, VA; Jason Emmanuel Manning, LEAD ATTORNEY, TROUTMAN SANDERS LLP, VIRGINIA BEACH, VA.

For William A. White, Movant: Harry Wayne Brown, LEAD ATTORNEY, ROANOKE, VA.

**JUDGES:** Michael F. Urbanski, United States Magistrate Judge.

**OPINION BY:** Michael F. Urbanski

**OPINION**

**MEMORANDUM OPINION**

This matter stems from intervening plaintiffs' motion, filed on June 10, 2008, for sanctions and petition for issuance of a rule to show cause why William A. White ("White") should not be held in contempt of court. This motion concerns [*2] subpoenas served on or about January 30, 2008 to White and four of his corporations: White Homes & Land, LLC; White Politics, LLC; American National Socialist Workers' Party, LLC; and National Socialist Movement of Roanoke, LLC. The subpoenas sought production of electronic information and computers used by White in conjunction with White's alleged interference with a fair housing lawsuit pending in the Eastern District of Virginia.[1] On February 11, 2008, White filed two motions to quash these subpoenas in the Eastern District of Virginia. These motions were withdrawn, as the subpoenas were issued out of the Western District of Virginia, making this district the appropriate venue to entertain the motions to quash. White subsequently refiled these motions in this district on March 3, 2008. By order entered March 6, 2008, the court denied White's motions to quash and ordered that the subpoenaed computers be produced to a court appointed computer forensic expert, Dr. Glenn Dardick ("Dardick") of Longwood University, for imaging and analysis. Order Denying Motion to Quash, Dkt. # 7. By agreed order dated March 12, 2008, Dr. Dardick was asked to perform various computer searches for relevant [*3] data and to "examine and search the

Case 1:09-cv-01043-JDB-cgc    Document 38    Filed 04/15/09    Page 15 of 19    PageID 138

Page 2
2008 U.S. Dist. LEXIS 50892, *3; 59 Collier Bankr. Cas. 2d (MB) 1820

electronically-stored information produced to him for evidence of any destruction, deletion, erasing, overwriting or other compromising of data." Agreed Protective Order of March 12, 2008, Dkt. # 9. After investigation, Dr. Dardick, by email dated April 11, 2008, reported an "unusual number of files deleted." [2] Email from Dr. Dardick to all counsel of record dated April 11, 2008. Specifically, Dr. Dardick reported that his analysis of White's computers revealed that 53,199 files located in White's Recycler folder were emptied on February 24, 2008. Id. This emptying of 59% of the Recycler folder was done three weeks after the subpoenas were served and eight days before the March 3, 2008 hearing. Id. In an email dated April 18, 2008, Dr. Dardick was posed the following question by counsel for the United States Department of Justice ("DOJ") and made the following response:

[Question:]

Is your finding that 53,199 files were "emptied" on 2/24/2008 consistent with an effort by the user of the computer to intentionally delete or destroy certain data files on that date?

[Answer:]

Although, I cannot give an opinion on why the files were emptied, I can say that [*4] the deletion of the files, given the quantity and content would be consistent with an effort by the user of the computer to intentionally delete or destroy certain data files on that date.

Email from Dr. Dardick to all counsel of record dated April 18, 2008. Dr. Dardick performed additional analysis and investigation concerning the deleted data pursuant to an order dated April 22, 2008. After further inquiry and email communication with counsel for the parties, Dr. Dardick was asked by counsel for the United States on May 1, 2008 whether his further investigation provided him "any reason as yet to change your earlier conclusion that the condition of the PC drive is consistent with an intentional effort by the user to destroy files? Could you explain?" Email from Daniel Yi of DOJ to Dr. Dardick and all counsel of record dated May 1, 2008. Dr. Dardick responded a little over two hours later as follows:

I have no reason to change my earlier conclusion that the deletion of the files was consistent with an intentional effort by the user to destroy files. However, the additional information that is now available, such as the file listings could assist the parties in supporting their arguments [*5] whether the evidence is not just "consistent," but whether or not the evidence supports or does not support the hypothesis that the deletion of the files were in fact an intentional effort by the user to destroy specific files.

Email from Dr. Dardick to all counsel of record dated May 1, 2008. In communications with Dr. Dardick, White's counsel questioned whether the large number of deleted files could be due to file compression or to free up disk space. By emails dated April 11 and April 18, 2008, Dr. Dardick rejected the suggestion that the large number of deleted files were due to file compression. On May 2, 2008, Dr. Dardick provided a lengthy explanation to Harry Brown, counsel for White, that it "seems unlikely" that the deletions were done to free up disk space as White's computer already had free disk space of "more than a third of the drive's capacity." Email from Dr. Dardick to all counsel of record dated May 2, 2008.

1  The parties have informed the court that the underlying litigation in the Eastern District of Virginia has been settled. According to the parties, however, the settlement contained a carve out provision for any link established between the defendant in that case [*6] and White and for matters relating to these subpoenas and any contempt or sanctions motions pertaining to White.

2  The string of email communications between Dr. Dardick and all counsel of record regarding the issue of deletion of data from White's computers is attached as Exhibit A. Pursuant to Standing Order No. 04-1 of the court, regarding redaction of personal data identifiers from all pleadings, the user names or local part of all email addresses, phone numbers, and fax numbers have all been redacted for public viewing. The domain name for the email addresses, however, have not been redacted. Unredacted copies of these materials shall be filed under seal in accordance with Standing Order No. 04-1.

Case 1:09-cv-01043-JDB-cgc   Document 38   Filed 04/15/09   Page 16 of 19   PageID 139

Page 3

2008 U.S. Dist. LEXIS 50892, *6; 59 Collier Bankr. Cas. 2d (MB) 1820

In their motion for sanctions and contempt filed on June 10, 2008, intervening plaintiffs allege that White intentionally deleted these files "at a time when he had actual knowledge that the information was being sought in discovery and that it might contain relevant information." Show Cause Motion at P 7, Dkt. # 26. Intervening plaintiffs assert further that "Dardick reported on May 22, 2008 that approximately 4,581 possibly relevant files containing user-created text (emails, Microsoft [*7] Word documents, Microsoft Excel files, etc) were irretrievable because of the large number of electronic files White had deleted at one time." Show Cause Motion at P 8. Because of White's alleged mass file deletion in the face of the subpoenas for his computers, intervening plaintiffs move for sanctions and for White to show cause why he should not be held in contempt of court. Intervening plaintiffs also allege they are entitled to attorney's fees incurred as a result of the alleged destruction of documents in violation of the subpoenas and that Dr. Dardick be compensated for the time incurred by him in researching and analyzing the information destroyed by White. Show Cause Motion at P 16.

Shortly after the Show Cause Motion was filed with the court, White filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Western District of Virginia. The court received notice of White's personal bankruptcy filing on June 16, 2008. The issue presently before the court is whether the automatic stay issued upon White's filing for bankruptcy, as required by *11 U.S.C. § 362(a)*, stays the intervening plaintiffs' motion for sanctions and petition to show cause. 3

   3 Although the [*8] subpoenas were issued to White and his four corporations, intervening plaintiffs' motion seeks sanctions and a motion to show cause only against White. The court notes that the four subpoenaed corporations would not be affected by an automatic stay resulting from White's personal bankruptcy filing. See *A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)* (holding that, absent "unusual circumstances," an automatic stay is generally not applicable to third party defendants or co-defendants); see also *Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007)*. However, as intervening plaintiffs do not appear to seek sanctions or contempt against the subpoenaed corporate entities but rather seek to proceed only against White, the court will not address the issue of any sanctions or contempt concerning the four corporations.

Under *11 U.S.C § 362(a)*, a bankruptcy filing operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action . . . against the debtor . . . ." *11 U.S.C. § 362(a)(1)*. The exemptions to the stay are listed in *11 U.S.C. § 362(b)*, including an exemption of the "commencement or continuation of a criminal action or proceeding [*9] against the debtor." *11 U.S.C. § 362(b)(1)*. A district court has concurrent jurisdiction with the bankruptcy court to determine the effect of White's bankruptcy proceeding on intervening plaintiffs' motion. See *United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc., 64 F.3d 920, 927 n.11 (4th Cir. 1995)* (citing *Brock v. Morysville Body Works, Inc., 829 F.2d 383 (3d Cir. 1987))*. Because the district Court's jurisdiction "attached first in time," it is proper for the district court to determine the issue. Id. (citing *Kline v. Burke Constr. Co., 260 U.S. 226, 43 S. Ct. 79, 67 L. Ed. 226 (1922))*.

A threshold issue is whether the contempt proceeding is civil or criminal, as the automatic stay does not apply to criminal contempt proceedings. Whether a contempt proceeding is civil or criminal is determined by examining the "character and purpose of the sanction involved," not by the manner in which the contempt proceeding is labeled. *Int'l Union United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)* (citing *Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S. Ct. 492, 55 L. Ed. 797 (1911))* (internal quotations omitted); see also *In re Dill, 300 B.R. 658, 667 (Bankr. E.D.Va. 2003)* (quoting *In re Maloney, 250 B.R. 671, 674 (Bankr. E.D.N.Y. 1996))*. [*10] A civil contempt proceeding is remedial and either "coerces the defendant into compliance with the court's order" or "compensates the complainant for losses sustained." *Bagwell, 512 U.S. at 827* (internal quotations omitted); see also *Dill, 300 B.R. at 667*. A criminal contempt proceeding is punitive and seeks to "vindicate the authority of the court." *Bagwell, 512 U.S. at 828* (internal quotations omitted); see also *Dill, 300 B.R. at 667*. As such, penalties associated with criminal contempt are imposed "retrospectively for a completed act of disobedience" and without any provision for purge of the contempt. *Bagwell, 512 U.S. at 828* (internal quotations omitted); see also *Dill, 300 B.R. at 667*.

Case 1:09-cv-01043-JDB-cgc   Document 38   Filed 04/15/09   Page 17 of 19   PageID 140

Page 4
2008 U.S. Dist. LEXIS 50892, *10; 59 Collier Bankr. Cas. 2d (MB) 1820

To determine whether the stay applies to a contempt proceeding, the United States Bankruptcy Court for the Eastern District of Virginia has adopted an analysis which "examine[s] all aspects surrounding" the contempt proceeding. *In re Rook, 102 B.R. 490, 494 (Bankr. E.D.Va. 1989), aff'd 929 F.2d 694 (4th Cir. 1991)*; see also *In re Dunham, 175 B.R. 615 (Bankr. E.D.Va. 1994)*. In Rook, the debtor, Rook, was held in contempt in 1983 ("1983 contempt order") for disobeying a previous state court decree [*11] concerning a divorce settlement. *Rook, 102 B.R. at 491*. After many appeals, the state court reaffirmed the 1983 contempt order in 1989 ("1989 contempt order"). Id. Sometime before the 1989 contempt order, Rook filed for bankruptcy and moved for the application of the automatic stay to the civil contempt proceedings. Id. The state court did not apply the stay to the contempt proceedings, finding that Rook was in contempt of court prior to his bankruptcy filing. Id. The Bankruptcy Court upheld the decision of the state court because the 1989 contempt order "was issued solely to uphold the dignity of the prior circuit court orders." *Id. at 495*. Rook was no longer able to bring himself into compliance with the 1983 contempt order, thus "converting a contempt citation, civil and remedial in nature, into a citation criminal and punitive in nature." Id.

Allowing those allegedly in contempt of court to avoid possible penalties by filing for bankruptcy would enable parties to "blatantly violate direct orders of [a] court and then seek shelter from a bankruptcy judge." *Am. Online, Inc. v. CN Prods., Inc., 272 B.R. 879, 881 (Bankr. E.D.Va. 2002)* (holding that plaintiff's discovery requests served [*12] for the purpose of determining if defendant was in contempt were not stayed by a bankruptcy filing) (quoting ***U.S. Spring Comm's Co. v. Buscher, 89 B.R. 154, 156 (Bankr. D.Kan. 1988)***) (internal quotations omitted). "The bankruptcy process cannot be invoked to immunize contumacious behavior." Id.

The motion before the court does not specifically delineate whether it seeks criminal or civil contempt. There is nothing about the show cause motion which seeks to coerce White to do anything or to provide him an opportunity to mitigate or avoid punishment for the already completed file deletion. Like Rook, White is no longer able to bring himself into compliance with the subpoena which the contempt proceedings concern. The files were deleted, some of which cannot be recovered. The thrust of the motion is to punish the underlying alleged deletion of computer files in the face of federal court subpoenas for production of those files. As such, the relief sought in the contempt proceeding is not remedial, but punitive in nature, and would be issued to uphold the dignity of the subpoenas issued under the authority of the court under the Federal Rules of Civil Procedure. *Fed.R.Civ.P. 45(e)* ("The [*13] issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena."); see also *Nilva v. United States, 352 U.S. 385, 77 S. Ct. 431, 1 L. Ed. 2d 415 (1957)* (affirming conviction of criminal contempt for disobeying a subpoena *duces tecum*). In Nilva, the Supreme Court noted that "it is settled that a criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control." *352 U.S. at 392*. Destruction of documents called for by subpoena is likewise punishable as criminal contempt. Any sanctions issued for the deletion of the files subject to the subpoenas are not remedial, but rather would issue to vindicate the authority of the court. "[T]he automatic stay was not intended by Congress to be used as a sword," and White cannot be allowed to use his bankruptcy filing as such. *In re Clowser, 39 B.R. 883, 886 (Bankr. E.D.Va. 1984)*. Accordingly, intervening plaintiffs' petition for a motion to show cause is properly considered to be a criminal contempt proceeding and exempt from the automatic stay under *11 U.S.C. § 362(b)(1)*.

The fact that intervening [*14] plaintiffs' motion seeks recovery of attorneys' fees and expert costs does not render the contempt civil and subject to the automatic stay. The expense, time, and effort expended by intervening plaintiffs' counsel and the court appointed expert as a result of the alleged contempt can be considered by the court as a factor in fashioning a criminal contempt penalty. Long ago, the Supreme Court upheld a criminal contempt sanction paid to a district court, half of which was to be paid to the party moving for criminal contempt for that party's reasonable expenses incurred as a result of the criminal contempt proceeding. *Union Tool Co. v. Wilson, 259 U.S. 107, 109, 42 S. Ct. 427, 66 L. Ed. 848, 1922 Dec. Comm'r Pat. 264 (1922)*. More recently, the Fourth Circuit characterized an award of attorneys' fees which were "proximately caused by defiance" of court orders as a criminal contempt penalty. *Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 822 (4th Cir. 2004)*. The Fourth Circuit explained that "putatively civil contempt sanctions will be held to be

'Case 1:09-cv-01043-JDB-cgc Document 38 Filed 04/15/09 Page 18 of 19 PageID 141

2008 U.S. Dist. LEXIS 50892, *14; 59 Collier Bankr. Cas. 2d (MB) 1820

Page 5

criminal sanctions in cases when the fines were 'not conditioned on compliance with a court order,' 'not tailored to compensate the complaining party,' but instead 'initiated to vindicate the authority [*15] of the court and to punish the actions of the alleged contemnor.'" *390 F.3d at 822* (quoting *Buffington v. Baltimore County, 913 F.2d 113, 133-35 (4th Cir. 1990)*, and *Bradley v. Am. Household, Inc., 378 F.3d 373, 377-79 (4th Cir. 2004)*. Because the petition seeks to punish White for deletion of documents subject to a subpoena, actions which cannot now be remedied, it is essentially criminal in nature and not subject to the automatic stay. In connection with this criminal contempt proceeding, the amount of fees incurred by the parties may be considered by the court in fashioning an appropriate criminal contempt sanction.

Because the motion to show cause is a criminal contempt proceeding, the court must, under *Rule 42 of the Federal Rules of Criminal Procedure*, appoint a prosecutor to pursue this matter. [4] Accordingly, Julia C. Dudley, Acting United States Attorney for the Western District of Virginia, is appointed to prosecute this contempt allegation. Such prosecution is to include two aspects of criminal contempt: (1) the alleged destruction of computer files subject to subpoena as detailed herein and in Exhibit A; and (2) White's emailing of a derogatory and inflammatory email to the [*16] court's law clerk on June 18, 2008. The email, attached as Exhibit B, is vile, contumacious and laced with expletives. While the invective in the email is not directed at the court, it was communicated directly to the court's law clerk. Plainly, such statements would be contemptuous if uttered in open court. The court sees no difference in making such statements in an email sent to the court's law clerk as they are plainly disrespectful and constitute an insult to the dignity of the court and an affront to our system of justice.

> 4 By order entered June 13, 2008, intervening plaintiffs' motion was referred to the undersigned magistrate judge for report and recommendation. However, as this matter concerns criminal contempt, the undersigned magistrate judge, under *28 U.S.C. § 636(e)(6)*, must certify the facts to a district judge who shall hear the evidence and decide the issue.

Pursuant to *28 U.S.C. § 636(e)(6)*, the undersigned certifies to the district court the following facts which occurred outside the presence of the undersigned magistrate judge: (1) Intervening plaintiffs have filed a motion for sanctions and contempt, which the court construes as criminal in nature, based on Dr. Dardick's [*17] forensic computer analysis, asserting that White deleted thousands of files from his computers at a time when said computers were subject to a subpoena issued by counsel for the intervening plaintiffs under the authority of the Federal Rules of Civil Procedure and the United States District Court for the Western District of Virginia; and (2) White sent the profane email attached as Exhibit B to the undersigned's law clerk, the court-appointed expert and counsel of record in this proceeding on June 18, 2008.

White is **ORDERED** to appear before The Honorable James C. Turk, Senior United States District Judge, on Friday, July 18, 2008 at 10:00 a.m. to show cause why he should not be held in contempt by reason of the facts so certified.

The Clerk of the Court hereby is directed to send a copy of this Memorandum Opinion to all counsel of record and to Julia C. Dudley, Acting United States Attorney for the Western District of Virginia.

Enter this 30th day of June, 2008.

/s/ Michael F. Urbanski

United States Magistrate Judge

## ORDER

In accordance with the memorandum opinion entered this day, it is hereby

**ORDERED**:

1. That Julia C. Dudley, Acting United States Attorney for the Western District of Virginia, [*18] is **APPOINTED** to prosecute the allegations of criminal contempt set forth in the memorandum opinion. Such prosecution is to include two aspects of criminal contempt which occurred outside the presence of the undersigned magistrate judge:

> (a) the alleged deletion of a large number of computer files subject to subpoena; and

> (b) White's emailing of a profane email to the court's law clerk on June 18,

Case 1:09-cv-01043-JDB-cgc Document 38 Filed 04/15/09 Page 19 of 19 PageID 142

Page 6

2008 U.S. Dist. LEXIS 50892, *18; 59 Collier Bankr. Cas. 2d (MB) 1820

2008.

2. White is **ORDERED** to appear before The Honorable James C. Turk, Senior United States District Judge, on Friday, July 18, 2008 at 10:00 a.m. to show cause why he should not be held in criminal contempt.

3. The unredacted versions of Exhibits A and B attached to the memorandum opinion entered this day **SHALL** be filed under seal.

The Clerk of the Court hereby is directed to send a copy of this Order to all counsel of record and to Julia C. Dudley, Acting United States Attorney for the Western District of Virginia.

Enter this 30th day of June, 2008.

/s/ Michael F. Urbanski

United States Magistrate Judge