UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

_____
                                    )
**NATIONAL BOARD OF MEDICAL**       )
**EXAMINERS** *et al.*,             )
                                    )
            **Plaintiffs,**         )
                                    )
      v.                            )     Civil Action No. 09-1043-JDB
                                    )
**OPTIMA UNIVERSITY LLC** *et al.*, )
                                    )
            **Defendants.**         )
_____)_____

**PLAINTIFFS' FOURTH SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CONTEMPT SANCTIONS**
_____

  Plaintiffs National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("FSMB") submit this supplemental memorandum in support of their request to have Defendant Eihab Mohammed Suliman ("Suliman") incarcerated unless and until he complies with this Court's Orders. Suliman has flagrantly violated and ignored this Court's several Orders, and continues to do so.

## PROCEDURAL BACKGROUND AND HISTORY

  This action was initiated by the Plaintiffs on February 23, 2009. (Doc. 1). On the same date, this Court entered an order authorizing the National Board of Medical Examiners and the Federation of State Medical Boards ("Plaintiffs") to seize and impound copies of all test preparation materials in the custody or control of Defendants Optima University LLC ("Optima") and Eihab Suliman ("Suliman") ("Impoundment Order"). (Doc. 21). The materials in question include materials that infringe the Plaintiffs' copyrights in the United States Medical Licensing Examination ("USMLE").

Plaintiffs attempted to carry out the authorized impoundment on February 24, 2009, at Optima's McKenzie, Tennessee location, with the assistance of two U.S. Marshals and two computer forensics experts. (Docs. 13, 13-1, 13-2). Suliman did not cooperate; in fact, he affirmatively attempted to undermine the impoundment efforts. (Docs. 13, 13-1, 13-2). As a result, Plaintiffs were unable to obtain all the materials called for in the Impoundment Order. (Docs. 13, 13-1, 13-2).

On March 4, 2009, the Plaintiffs filed their Status Report and Emergency Motion for an Order Requiring Defendants to Show Cause Why They Should Not Be Held in Contempt for Violating the Court's TRO and Impoundment Order ("Motion for Contempt"). (Docs. 13, 13-1, 13-2). This Court granted the Plaintiffs' emergency motion, and set a show cause hearing.

Before the scheduled show cause hearing, Suliman provided counsel for Plaintiffs certain passwords to certain computer equipment. (Doc. 33, p. 2). However, the passwords were insufficient to allow Plaintiffs access to all of the information they were entitled to recover and impound from the Defendants. Counsel for the Plaintiffs explained this to then-Counsel for Defendants, and a second visit to Suliman's property was scheduled.

Counsel for Plaintiffs, a U.S. Marshal, and two computer forensics experts participated in the second visit to Optima on March 26, 2009. (Doc. 33, p. 2). Plaintiffs' computer forensics experts examined Suliman's Sony VAIO laptop, finding two encrypted hard drives and 300gb of "free space." (Doc. 33, p. 2). The TrueCrypt software installed on Suliman's computer allows a user to encrypt and hide volumes on a hard drive. (Doc. 33, p. 2). Suliman, however, professed not to know anything about

computers or whether he had a "Hidden Volume" of information on the laptop. The amount of free space between two partitions on the laptop computer is rarely seen in computers that are used frequently, and struck Plaintiffs' computer forensics expert as "extremely suspicious." (Doc. 33, p. 2). Statements made by Defendant Suliman about the age of his computer and its amount of use did not appear to be true, based the type and condition of this computer. (Doc. 33, p. 2).

Further forensic review of Suliman's laptop computer revealed that, on the morning of March 26, 2009, at 9:30 a.m. (at or just prior to the time that Plaintiffs' computer forensics experts arrived at Optima), the data wiping utility "Eraserl.exe" was run on Suliman's laptop. (Doc. 33, p. 2-3). Forensic review also showed that Suliman's laptop had previously been connected to an FTP site. (Doc. 33, p. 3). FTP sites are utilized as storage locations where an individual can move files from a computer to an FTP site and later retrieve the files from any computer. (Doc. 33, p. 3). Furthermore, forensic review indicated that, on March 11, 2009, the entire operating system on Suliman's laptop was completely reinstalled. (Doc. 33, p. 3). This reinstallation process may have prevented Plaintiffs from recovering any data from or identifying any activity on the computer prior to the reinstallation. (Doc. 33, p. 3). Plaintiffs' computer forensics expert has concluded that "there is no question that specific activities were taken to hide, relocate and prevent the recovery and viewing of data that at one time resided or continues to reside (in an encrypted and hidden format) on Suliman's laptop computer or on an FTP site." (Doc. 33, p. 3). Suliman also was uncooperative in supplying passwords for the classroom computers. (Doc. 33, p. 3).

If Suliman had cooperated, the second collection could have been performed in less than five hours. (Doc. 33, p. 3). Instead, Plaintiffs' counsel, their two computer forensics experts, and a U.S. Marshal had to spend fourteen hours on site, and Plaintiffs have yet to obtain all the material called for in the Court's Impoundment Order. (Doc. 33, p. 3).

Thus, rather than curing his prior contempt of court, Suliman took additional actions that constituted additional violations of the Court's Impoundment Order. Suliman failed to cooperate "fully and promptly" in the implementation of the Impoundment Order, in direct violation of paragraph 3 of the Impoundment Order, and Suliman failed to "preserve all documents and other records in their custody or control that relate in any way to their USMLE test preparation services or programs, and . . . refrain from destroying any such records[,]" as required by paragraph 8 of the Impoundment Order. Impoundment Order at 2-3 (Feb. 23, 2009). (Doc. 13).

On April 14, 2009, this Court held a show cause hearing. (Doc. 36). Then-Counsel for the Defendants advised the Court and counsel for the Plaintiffs that the Defendants had recently filed bankruptcy. (Doc. 36). This Court directed Plaintiffs' counsel to submit a brief regarding the Defendants' bankruptcy situation, and Plaintiffs' counsel complied with this directive on April 15, 2009. (Doc. 38). Plaintiffs' counsel subsequently provided this Court with copies of the Orders from the Bankruptcy Court lifting the Automatic Stays as to both Defendants. (Doc. 39-2, 39-3). Therefore, Suliman's bankruptcy filing has no impact on this matter. Indeed, the Suliman and Optima bankruptcy proceedings have both been dismissed following violations of the

Bankruptcy Court's rules and requirements by Suliman and Optima – but not before Suliman had further delayed any judicial reckoning for his contempts of court,

On July 21, 2009, after Plaintiffs filed two (2) supplemental memorandums in support of their Motion for Contempt (Docs. 39, 50), this Court set a second Show Cause hearing for September 23, 2009. In explaining why Suliman should be held in contempt based on his persistent and flagrant disregard for this Court's Orders, Plaintiffs' counsel noted at the hearing that Suliman has:

1. Repeatedly refused to comply with this Court's Orders;

2. Knowingly and deliberately destroyed data covered by this Court's Orders; and

3. Steadfastly refused to participate in this litigation—all to the detriment of the Plaintiffs and with significant ongoing risks to the general public because of the defendants' compromises of the secure USMLE examinations that are used to license health care providers across the country.

In addition to other relief, Plaintiffs' counsel requested that this Court enter an Order on Plaintiffs' Motion for Contempt that would order Suliman's **incarceration** until he complied with the Court's prior Orders. This Court advised Plaintiffs' counsel that an Order finding Suliman in contempt would be entered, and that the Court would consider further the request to have Suliman incarcerated. (Doc. 54).

Subsequent to this most recent show-cause hearing, Plaintiffs submitted notice to the Court of several additional actions by Suliman that demonstrate his flagrant and shocking disrespect for, and disobedience of, this Court's Orders. (Doc. 55, 55-1, 55-2).

The materials submitted consisted of writings that Suliman distributed by email or posted on a third-party website describing in detail his attempts to defy this Court's Orders, and insulting the Plaintiffs and their agents' attempts to carry out this Court's Orders. (Doc. 55, 55-1, 55-2). What's more, Suliman's writings made unflattering characterizations of this Court and attempted to impugn the integrity of the Court, its Orders, and the US Marshalls who attempted to assist in the enforcement of the Court's Orders. (Doc. 55, 55-1, 55-2). These materials confirmed, yet again, that Suliman has no respect for the rule of law and Suliman **will not** comply with this Court's Order on his own volition.

On October 16, 2009, this Court entered its Order granting Plaintiffs' Motion for Contempt. The Order required Suliman to complete several tasks, but did not order Suliman's incarceration to ensure compliance with this Court's Orders. (Doc. 56).

As was to be expected—based on Suliman's lengthy track record of defying this Court's prior Orders—Suliman has not complied with the Court's Order on Plaintiffs' Motion for Contempt. Despite numerous efforts by Plaintiffs' counsel to contact Suliman regarding his duties in connection with this Court's Order—**including sending a copy of the Order to Suliman's bankruptcy counsel** (*See* Exhibit A)—Suliman has not complied with a **single provision** of the Court's Order. Two months have gone by since entry of the intial Contempt Order, and Suliman still has not:

1. Provided Plaintiffs with the affidavit required in (1)(a) of the Order;

2. Allowed Plaintiffs access to his property in McKenzie, TN, as required by (1)(b) of the Order;

3. Cooperated with the implementation of the Order by the Plaintiffs, their forensic experts, and the U.S. Marshal(s), as required by (2) of the Order;

    4.        Provided Plaintiffs with any indication that he preserved all documents covered by this Court's Orders, as required by (3) of the Order;

    5.        Reimbursed Plaintiffs for the additional costs incurred by the Plaintiffs as a result of the Defendant's defiance of this Court's Orders, as required by (5), (6) and (7) of the Order;

Therefore, Suliman is **again** in direct violation of this Court's original Impoundment Order, and he is also in contempt of the Court's initial Contempt Order. Plaintiffs therefore urge the Court to order Suliman's **incarceration** until Suliman complies with this Court's Orders.

## LEGAL DISCUSSION

At this time, the only effective step that can be taken to enforce this Court's Orders—and eliminate Suliman's blatant disrespect for this Court and its Orders—is to require the incarceration of Suliman until he complies with the Court's Orders.

"<u>Both imprisonment and fines, when coercive or conditional, are legitimate civil contempt sanctions.</u>" *United States v. Tennessee*, 925 F. Supp. 1292, 1301 (W.D. Tenn. 1995)(citations omitted)(emphasis added); *see also Int'l Union, United Mine Workers of Amer. v. Bagwell*, 512 U.S. 821, 827 (1994)("penalties designed to compel future compliance with a court order . . . may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."); *In re Grand Jury Proceedings*, 280 F.3d 1103, 1110 (7th Cir. 2002)("'<u>a court may punish civil contempt by both a fine and imprisonment</u>'")(citations omitted)(emphasis added); *United States v. Bayshore Assoc., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991)("<u>Incarceration has long been established as an appropriate sanction for civil contempt</u>")(emphasis added).

Judge Anderson recently ordered the incarceration of an individual in an attempt to enforce the Court's orders. *U.S. v. Dye*, 2009 WL 2579662 (W.D. Tenn. August 18, 2009). In *Dye*, the respondent refused to comply with an IRS Summons. After hearings—in which the respondent participated—Judge Anderson ordered the respondent to appear at a certain place and time to produce the information sought in the IRS Summons. While the respondent appeared at the time and place ordered by the Court, the respondent did not bring the materials required and did not answer any questions. Following this event, Judge Anderson held another hearing, after which Judge Anderson ordered the respondent **incarcerated** until he complied with the IRS Summons.

In issuing this order, Judge Anderson noted that 18 U.S.C. 401 vests a U.S. court with the authority to punish an individual by **imprisonment** for "[d]isobedience or resistance to its lawful writ, process, **order**, rule, decree, or command." *Dye*, 2009 WL 2579662, *3-4 (emphasis added). He also noted that "[t]he Court has 'the power to make such order as [it] shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.'" *Id*. at *4. Finally, Judge Anderson recognized that, "[c]ivil contempt is remedial and intended '**to benefit the complainant either by coercing the defendant to comply with the Court's order** via a conditional fine **or sentence** or by compensating the complainant for any injury caused by the defendant's disobedience.' The conditional nature of a sanction renders an action one for civil contempt." *Id*. (emphasis added). As a result, Judge Anderson entered an order requiring the respondent's **incarceration** if the respondent did not comply with the Court's orders by a date certain. *Id*. at *6.

In this case, the need for an Order of this Court requiring the incarceration of Suliman is even more urgent than the circumstances present in *Dye*. Following two (2) show cause hearings and ample opportunities for Suliman to appear in the case and present any defense or argument that he might have, the following facts stand unrefuted:

1. Suliman's numerous, flagrant violations of this Court's Impoundment Order and its initial Contempt Order;
2. Suliman's persistent failure to participate in the litigation process;
3. Suliman's defiance of the orders of the Bankruptcy Court; and
4. Suliman's brazen accusations and threats against the Plaintiffs, Plaintiffs' counsel, the U.S. Marshals and this Court

Suliman has made it abundantly clear that he will not obey this Court's Orders, or participate in this litigation, unless he is compelled to do so through **imprisonment**.

Given the subject matter involved in this litigation (the licensing of U.S. physicians), the health and welfare of the U.S. public remains threatened by the actions of Suliman and his business enterprise. He has shown a total disregard for the integrity of the licensure process, and still has in his possession secure exam content that was stolen from overseas test centers where the USMLE exams are administered. While Suliman continues to treat this Court with the same disdain that he has shown for the Plaintiffs, the individuals who have taken advantage of Suliman's unlawful USMLE test-preparation activities are working their way through the graduate medical education process towards licensure as physicians. That is a very disturbing prospect.

Unless Suliman is incarcerated, the Plaintiffs and this Court will be caught in a perpetual cycle of Suliman's non-compliance with Orders of the Court. Plaintiffs

therefore respectfully request this Court enter a supplemental Order on Plaintiffs' Motion for Contempt containing the following provision:

> The Court ORDERS that a warrant for the arrest of defendant Eihab Mohamed Suliman be issued forthwith, and that defendant Suliman be imprisoned as soon as he can be located by the U.S. Marshalls until such time as defendants have fully complied with the Impoundment Order and this Court's Contempt Order of October 19, 2009.

The Plaintiffs also request any such other and further relief to which they may be entitled in this instance.

Respectfully submitted,

/s/ Russell E. Reviere
Russell E. Reviere
Rainey, Kizer, Reviere & Bell, P.L.C.
105 Highland Avenue South
P.O. Box 1147
Jackson, TN 38301
(731) 423-2414
rreviere@raineykizer.com

Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
(202) 662-0200
rburgoyne@fulbright.com
cmew@fulbright.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served on the following via regular mail at their last known address:

Eihab Suliman
1774 Hwy 22
McKenzie, TN 38201

This the 15th day of December, 2009.

/s/ Russell E. Reviere