UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| NATIONAL BOARD OF MEDICAL EXAMINERS *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 09-1043-JDB |
| OPTIMA UNIVERSITY LLC *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

This case presents unusually clear evidence of willful -- indeed, egregious -- copyright infringement by a test preparation program, its president, and various co-infringers.

As the attached evidence makes clear, there is no genuine issue of material fact regarding whether Optima University LLP ("Optima") and its president, Eihab Suliman ("Suliman") (collectively, "Defendants"), have engaged in, and likely will continue to engage in, direct and contributory copyright infringement.  The Defendants unlawfully copied and distributed test questions from the United States Medical Licensing Examination ("USMLE"), a standardized and secure examination that is owned and copyrighted by the National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards ("Federation") (collectively, "Plaintiffs").  The Defendants were assisted in their unlawful activities by associates in Romania and Hungary, who registered to take USMLE exams with no intent to pass, but only to copy test questions with scanning devices.

The harm caused by the Defendants' actions is substantial and merits commensurate relief.  It is not merely a question of the monetary harm to the Plaintiffs and their intellectual property (although that harm is substantial).  Medical licensing authorities in every U.S. state and territory rely on the USMLE to help assess the qualifications of candidates for medical licenses.  The theft of secure test questions that appear on licensing tests undermines the integrity of the physician licensure process.  The Defendants' willful conduct warrants maximum statutory damages, injunctive relief, attorney's fees and costs.

## PROCEDURAL HISTORY

This case was filed in February 2009 but the underlying unlawful conduct began at least as early as 2007 and has also triggered a criminal investigation.  The FBI raided Optima's New Jersey location in 2008 after being alerted to Optima's efforts to steal and market secure USMLE test materials.  The criminal investigation of Optima, Suliman and their associates is on-going.  Undeterred, Optima continued to operate after the FBI's raid and continued to use infringing USMLE materials.

In mid to late 2008, Optima purchased several buildings on a multi-acre parcel of land in McKenzie, Tennessee and moved its operations here.  NBME and the Federation filed this lawsuit soon thereafter, on February 23, 2009.  This Court immediately issued an order allowing the Plaintiffs to impound infringing materials from Optima's premises. *See* Dkt. 21 (the "Impoundment Order").  Optima and Suliman never fully complied with the Impoundment Order.  As a result, after holding a hearing and giving the Defendants multiple opportunities to explain and cure their non-compliance, the Court entered an Order on October 16, 2009, holding the Defendants in contempt.  *See* Dkt. 56 ("Initial Contempt Order").  The Initial Contempt Order awarded Plaintiffs $18,985.21 to

compensate them for costs incurred as a result of the contempt. It also ordered Defendants to comply fully with the Impoundment Order.

Defendants then failed to comply with the Initial Contempt Order. This resulted in the entry of an Order to Show Cause on January 15, 2010. *See* Dkt. 58. When Mr. Suliman ignored this Order, the Court entered an Order to Issue Warrant for the Arrest of Eihab Suliman. *See* Dkt. 60 (Feb. 11, 2010) ("Second Contempt Order").

Because the U.S. Marshals have been unable to locate Mr. Suliman, he has not been arrested. It is believed that he is in Egypt. *See* Exs. A and B hereto (materials from the websites www.ezaa.com and www.egyptprivateinvestigation.com, on which Mr. Suliman offers or has offered a range of services, including services that relate to the Optima programs, with addresses listed in Alexandria, Egypt and McKenzie, Tennessee). The Optima website has remained operational, at least periodically, and, when operating, it has listed Optima's address as being in McKenzie, Tennessee. *See* Ex. C hereto (materials from the website www.OptimaUniversity.com). As recently as May 4, 2010, the website stated that Optima will soon be offering internet-based USMLE exam preparation programs, which opens up a new and even more troubling avenue for the Defendants to sell and distribute infringing USMLE materials. *See* Ex. C hereto.

## FACTUAL BACKGROUND[1]

### I.   NBME AND THE FEDERATION

NBME is a not-for-profit organization that provides assessment services for the health professions. Decl. of Gerard F. Dillon, Ph.D. ("Dillon Decl."), ¶ 2. Its mission is to help protect the public through state-of-the-art assessment of the knowledge and skills

---

[1]       In accordance with Loc. R. 7.2(d)(2), Plaintiffs attach as Appendix A to this Memorandum a Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment, with declarations and exhibits from the record in support of those facts.

of health professionals.  *Id.*  The Federation is a non-profit organization representing 70 state medical boards of the United States and its territories.  *Id*. ¶ 3.  The Federation's mission is to improve the quality, safety and integrity of health care through development and promotion of high standards for physician licensure and practice.  *Id*.

## II.    THE USMLE

The NBME and the Federation own and sponsor the USMLE, which is a standardized examination used to evaluate applicants' competence for medical licensure in the U.S. and its territories.  *Id*.  The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills that constitute the basis of safe and effective patient care.  *Id.* ¶ 6.  The USMLE is administered at locations around the world to individuals who are attending, or have graduated from, medical schools in the United States and abroad.  *Id*.  State medical boards rely upon successful completion of the three USMLE component exams, or "Steps," as an important element in the process for licensing physicians. *See id.* ¶¶ 7, 10.

All three USMLE Step exams include multiple-choice questions, which are administered in a computer-based format.  *Id*. ¶ 13.  The development of these multiple choice questions is time-consuming and expensive, requiring the involvement of subject matter experts as well as editors and other technical staff.  *Id*. at ¶ 14.  Plaintiffs are the sole owners of all right, title and interest in the copyrighted USMLE tests and test questions at issue in this lawsuit.  *Id*. ¶¶ 15-16.  The USMLE test forms are original, copyrighted materials that Plaintiffs have registered with the U.S. Copyright Office in

compliance with regulations adopted specifically to protect the confidentiality of "secure" tests. *Id*. ¶ 16.[2]

That the USMLE is a "secure" test means that the questions that appear on each exam are confidential and have not been previously disclosed by the Plaintiffs to the general public. *Id*. ¶¶ 11-12. The tests need to remain secure because -- as is common practice with standardized tests -- the Plaintiffs reuse certain questions from each examination on subsequent examinations in order to "equate" examination scores from one test form to another. *Id*. ¶ 11. As a result, some questions that appear on each version of a USMLE exam will also appear on future versions of the exam, and are not intended to be disclosed except during actual test administrations. *Id*. ¶¶ 11-12.

The unauthorized disclosure of secure test items compromises the integrity of the examination process by jeopardizing the validity of scores. *Id*. ¶ 10. This has particular significance here, because state medical boards use the USMLE in licensing doctors. *Id*. The USMLE is an integral component of each state's effort to ensure that only competent and qualified individuals are licensed to practice medicine. *Id*. To maintain the integrity of the process, the USMLE's "Bulletin of Information" expressly notifies prospective examinees that USMLE exam materials are confidential and copyrighted, and may not be reproduced or distributed. *Id*. ¶ 9. Examinees agree to comply with "Rules of Conduct" that include agreements not to remove materials in any form, or to reproduce or disseminate information about the exam. *Id*. ¶ 10.

---

[2]    The "TX" registration numbers assigned by the Copyright Office to the sets of computer-based questions that have been registered by the Plaintiffs include the following:  TXu 1-256-037; TX 6-845-880; TXu 1-192-927; TXu 1-256-036; TX 6-468-136; TX 6-845-857; TX 6-419-276; TXu 1-256-031; TXu 1-256-030; TXu 1-256-025; TXu 953-854; TXu 1-111-542; TX 5-021-440; TXu 928-261; TX 4-838-008; TX 4-958-938.  *See* Declaration of Steven Haist ("Haist Decl.") ¶ 9 & Ex. 6.

### III.    DEFENDANTS' UNLAWFUL CONDUCT

In 2007, NBME discovered a series of unusual test results from individuals who took the USMLE exams in Bucharest, Romania and Budapest, Hungary.  *Id.* ¶¶ 17-20. The test scores and answer patterns suggested that the individuals were taking the exams not in an effort to pass, but to gain access to exam content.  *Id.* ¶¶ 19-20.  The video recordings of their testing sessions showed them holding up a device near their computer screens to photograph or scan examination questions.  *Id.* ¶¶ 18, 21.

One of these individuals, Marius-Antoniu Ciurez, took the USMLE at least six times and always failed.  *Id.* ¶¶ 18-19.  On four of his USMLE applications, Ciurez listed an address in Elizabeth, New Jersey, as his residence, and on two other applications, he listed an address in Romania.  *Id*. ¶¶ 23-24.  Ciurez also reported attending a medical school in Romania.  *Id*. ¶ 20.  Other individuals seen copying on the videotapes likewise took USMLE examinations in Romania or Hungary, scored very poorly, attended the same medical school, and listed the same New Jersey or Romanian addresses on their USMLE applications.  *Id.* ¶ 20.

The Romanian medical school and residential addresses identified by Ciurez and the others are identical to those identified by Suliman, the president of the test preparation course, Optima.  *Id*. ¶¶ 22-24.  Suliman himself has registered to take the USMLE twelve times, and has taken the components of the USMLE at least twice; each time he had access to secure materials.  *Id.* ¶ 23.  At no time were Suliman, Ciurez, or any others identified here authorized to videotape, copy, reproduce, publish or distribute copies of, disclose to third persons, display, or prepare derivative works based on all or any portion of any USMLE examinations.  *Id*. ¶¶ 21, 31.  On the contrary, like all other

USMLE examinees, they received written notice that such activities were prohibited as part of each of their numerous applications to take the USMLE. *Id*. at ¶ 9.

Optima's test preparation program was originally located in New Jersey. *Id*. at ¶ 25. In 2008, however, Optima relocated to McKenzie, Tennessee. Burgoyne Decl. ¶ 3. Optima also set up a website to advertise its programs. Optima told prospective customers that they would have "[a]ccess to over 3,000 USMLE style questions," and that the pass rate for Optima enrollees was 99%. *Id.* ¶ 4, Ex. 1 at 2. Optima charged $6,950, $4,950 and $3,250, respectively, for its 12-, 7- and 4-week programs. *Id.* ¶ 4, Ex. 1.

In the face of a federal criminal investigation that was ongoing but had not yet curbed the unlawful activities of Optima and Suliman, NBME and the Federation filed this civil lawsuit in February 2009. Pursuant to the Court's Impoundment Order (*see* Dkt. 21), U.S. Marshals and forensic investigators retained by the Plaintiffs went to Optima's McKenzie premises and found sixty (60) or more computers, sleeping quarters, a number of students, and personal effects at most of the computer stations. Tisdel Decl. ¶ 7; Jimenez Decl. ¶ 4. As the investigators were attempting to access Optima's computer-based course materials, the server that hosted the materials was abruptly shut down. Jimenez Dec. ¶¶ 2, 9. Suliman arrived shortly thereafter, leading one investigator to conclude Suliman had been notified of the visit and shut the server down in response. *Id*. When he arrived, Suliman failed to provide passwords or to identify computer equipment that was elsewhere on the premises. *Id*. ¶¶ 10-15.

Suliman's failure to comply with the Court's Impoundment Order necessitated a March 26, 2009 follow-up visit by Plaintiffs' representatives. Although the visit had

been arranged by the Defendants' attorney, Defendants again obstructed the efforts to impound materials.  Tisdel Decl. ¶ 10-17, 27-33.  Tests showed that the entire operating system of Suliman's laptop had been reinstalled two weeks prior to the visit, an activity that deletes data and prevents future retrieval.  *Id*. ¶ 27.  In addition, files had been transferred from Suliman's laptop to an external site on the morning of the visit.  *Id*. ¶¶ 10, 27.  Hard drives of many of Optima's computers had also recently been replaced.  *Id*. ¶ 30.  Investigators concluded that specific steps had been taken to hide, relocate and prevent the viewing of data.  *Id*. ¶ 29.

Notwithstanding Defendants' defiance of the Court's authority and efforts to frustrate the investigation,[3] the impoundment visits yielded conclusive evidence of infringing activity, including (1) handwritten notes that reconstruct actual secure test questions from actual USMLE examinations; (2) typed, virtually verbatim copies of secure USMLE questions; (3) computer screen shots from actual test administrations showing secure USMLE test questions; and (4) copies of non-secure, copyrighted USMLE questions that are made available to prospective examinees on USMLE's website.  Declaration of Steven Haist ("Haist Decl."), ¶¶ 6-8.  Copyrighted USMLE questions were found in the Optima materials.  *Id*. ¶ 5.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where there are no genuine issues of material fact, and one party is entitled to judgment as a matter of law.  *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009); Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

---

[3]      Subsequent to the impoundment visits, Optima sent e-mails to its students suggesting  a lack of integrity on the part of the Court and U.S. Marshals.  *See* Notice of Filing, Dkt. 55, Exs. A & B.

no genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (citations omitted).  If an opposing party does not respond to a summary judgment motion and evidence in support of it, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

## ARGUMENT

## I.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT THAT DEFENDANTS INFRINGED THEIR COPYRIGHTS.

Liability for direct copyright infringement arises from the violation of any one of the exclusive rights of a copyright owner, which include "the exclusive right to, and to authorize others to, reproduce, distribute, perform, display, and prepare derivative works from the copyrighted [work]." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).  "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).  The attached evidence shows that there is no genuine issue of material fact regarding whether the Plaintiffs own valid copyrights to the USMLE test materials, or whether the Defendants have infringed those copyrights.

### A.    Plaintiffs Own the Copyrights to the USMLE Test Materials.

It is firmly established that test questions are a proper subject of copyright protection.[4]  *See, e.g., Chicago Bd. of Educ. v. Substance, Inc.,* 354 F. 3d 624, 626-27 (7th Cir. 2003); *Educ. Testing Serv. v. Katzman*, 793 F.2d 533, 538-40 (3d Cir. 1986); *Ass'n of Am. Medical Colleges v. Princeton Review, Inc.,* 332 F. Supp. 2d 11, 14 (D.D.C.

---

[4]     A "secure test" is defined as "a nonmarketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." 37 C.F.R. § 202.20(b)(4).  The secure test regulation suspends the requirement to deposit copies of the work.  *See id*. § 202.20(c)(2)(vi).

2004); *Graduate Mgmt. Admission Council v. Raju,* 267 F. Supp. 2d 505, 508-10 (E.D. Va. 2003); *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 495 F. Supp. 34, 36-37 (N.D. Ill. 1980) ("bar examinations are 'writings' prepared by 'authors' which are copyrightable [under the Constitution]"), *aff'd in relevant part*, 692 F.2d 478, 480-81, 487 (7th Cir. 1982).   The copyright extends not only to each test form (in the case of paper-based tests) or pool of questions (in the case of computer-based tests) that is registered with the Copyright Office, but also to the individual questions themselves.  *See Educ. Testing Serv. v. Simon,* 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999).

A certificate of registration from the Copyright Office constitutes "prima facie evidence of the validity of the copyright" and of the facts stated in the certificate.   17 U.S.C. § 410(c); *Raju*, 267 F. Supp. 2d at 510.   It is undisputed that the Plaintiffs registered their test questions and received certificates from the Copyright Office.  *See* Haist Decl. ¶ 9, Ex. 6 (copies of the applicable copyright certificates).

## B.   The Defendants Copied Plaintiffs' Copyrighted Test Materials.

A party may demonstrate actual copying through either direct or circumstantial evidence.  *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007).  To establish that a work has been copied, a plaintiff must either introduce direct evidence of the defendant's copying or prove it indirectly by showing that the defendant had access to the plaintiff's work and that there is a substantial similarity between it and the defendant's work, thus giving rise to an inference of copying.  *Bridgeport Music v. UMG Recordings*, 585 F.3d 267, 274 (6th Cir. 2009).

### 1.   There is Direct Evidence of Copying.

This is one of the "rare case[s] in which there is direct evidence that defendants copied plaintiff's work."  *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies*, 458 F.

Supp. 2d 252, 256 (E.D. Pa. 2006).  Ciurez and other third parties in Romania and Hungary were videotaped copying USMLE test materials by holding their hands up to the computer screen to use a device to take pictures or to scan the questions during their USMLE examinations.  Dillon Decl. ¶¶ 18, 21.  *See Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) ("Direct evidence of copying . . .  includes . . . witness accounts of the physical act of copying").  These individuals all failed their exams with unusually low scores, a further indication that they were not attempting to pass the exam, but copying it.  Dillon Decl. ¶¶ 17, 19-20.  *See Ass'n of Am. Med. Colleges v. Mikaelian*, 571 F. Supp. 144, 150 (E.D. Pa. 1983) ("It defies logic that such a person would score so low on repeated sittings for the [exam] unless he was spending his time familiarizing himself with the test questions rather than answering the test questions."), *aff'd mem.*, 734 F.2d 3 (3d Cir. 1984).

Materials impounded from Optima's facility provide further direct evidence of Defendants' infringements.  They included handwritten notes that reconstruct secure test questions, as well as computer screen shots from actual exam administrations.  Haist Decl. ¶¶ 6-7, Ex. 1-3.  *Compare Nat'l Conf. of Bar Exam'rs*, 458 F. Supp. 2d at 256 (evidence of copying where defendants "regularly write down information about the fact patterns, prompts, and answer choices appearing on MBE examinations that they have taken" and use those notes when preparing questions).  Also impounded were non-secure questions that were copied, wholesale, exactly as they appear on the USMLE website. Haist Decl. ¶ 8, Ex. 5.  Direct evidence thus shows that Defendants are liable for copyright infringement.

### 2.      There is Also Circumstantial Evidence of Copying.

While the direct evidence described above is sufficient to show copyright infringement, there is also supporting circumstantial evidence.  A plaintiff may "establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendants and (2) a substantial similarity between the two works at issue."  *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999).

### a.      Defendants had Access to Copyrighted Materials.

"Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy plaintiff's work."  *Murray Hill Pubs. v. Twentieth Century Fox*, 361 F.3d 312, 316 (6th Cir. 2004).  Evidence that a third party with whom a defendant was dealing had possession of plaintiff's work is also sufficient to establish access by the defendant.  *Id*.  And a lesser showing of access (or even no showing at all) will suffice where the works are "striking[ly]" similar.  *Id*. at 317.

Access is clearly established.  Suliman has personally taken Step 1 and Step 2 CK.  Dillon Decl. ¶ 23.  Ciurez and other third parties also took USMLE Step 1 and/or Step 2 CK examinations, thereby obtaining access that is properly imputed to the Defendants.  *See id* ¶¶ 17-24; *Murray Hill*, 361 F.3d at 316; *see also Educ. Testing Serv. v. Simon*, 95 F.Supp. 2d 1081, 1088 (C.D. Cal. 1999) ("Defendants obtained access to ETS's copyrighted MSAT forms and questions through students who had recently taken the test.").  Defendants had access to non-secure copyrighted USMLE materials through the USMLE website.  *See* www.usmle.org.

> **b.** **Questions Found in Optima's Materials are "Substantially Similar," and In Many Instances Identical, to Copyrighted USMLE Materials.**

The materials found among Optima's materials include numerous questions that are identical or, in some cases, substantially similar to Plaintiffs' copyrighted works.

The test for "substantial similarity" is "whether a lay observer would consider the works as a whole substantially similar to one another." *UMG Recordings*, 585 F.3d at 275. Although the Sixth Circuit applies the "substantial similarity" test in two steps, the two steps are "really just a refinement of the ordinary observer test." *See Stromback v. New Line Cinema*, 384 F.3d 283, 284 (6th Cir. 2004). "[A] coaching school cannot escape copyright liability by claiming that its copying of secure test questions is not word-for-word.... Immaterial variations do not alter the conclusion that infringing material is substantially similar to copyrighted material." *Simon*, 95 F. Supp. 2d at 1088.

Defendants claim to have more than 3,000 "USMLE style questions." Burgoyne Decl. ¶ 4, Ex. 1. Many test questions found at Optima are identical or substantially similar to copyrighted USMLE questions. Dillon Decl. ¶¶ 25-27; Haist Decl. ¶¶ 5-9, Ex. 1-5. *See Raju*, 267 F. Supp. 2d at 510 ("copying is evident from both Raju's claim on his website that he provides '100% actual questions,' and a side by side comparison of Raju's test materials with actual GMAT questions"). Side-by-side comparisons of questions found in material impounded from Optima confirm that Optima has copied and distributed questions that are substantially similar, if not identical, to copyrighted USMLE questions. Haist Decl. ¶ 7, Ex. 4; Dillon Decl. ¶ 27. Some material is in the form of handwritten notes that reconstruct actual USMLE exam questions; other material consists of typed, virtually verbatim copies of secure USMLE questions; and some

materials are in the form of computer screenshots of Plaintiffs' copyrighted questions. Haist Decl. ¶¶ 6-8.

Given Defendants' undisputed access to USMLE materials, and the substantial similarity between the Optima questions and Plaintiffs' questions, circumstantial evidence also confirms the Defendants' infringements.

### 3.    Defendants Engaged in Contributory Infringement.

Defendants are additionally liable for contributory infringement of Plaintiffs' copyrights. *Bridgeport Music, Inc. v. WB Music Corp*., 508 F.3d 394, 398 (6th Cir. 2007).   Contributory infringement occurs when a party induces, causes, or materially contributes to the infringing conduct of another. *Id*.   A plaintiff proves contributory infringement by showing (1) direct copyright infringement by a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) the defendant's material contribution to the infringement. *NCR Corp. v. Korala Assoc., Ltd*., 512 F.3d 807, 816 (6th Cir. 2008).

As detailed above, Ciurez and other third parties were involved in direct copyright infringement by taking pictures of the secure USMLE test questions during their exam. Suliman and Optima knew of this infringement.   At a minimum, they induced those directly infringing activities by using the Optima program test materials that were copied by the third parties.  Suliman's numerous USMLE applications indicated that he attended a medical school in Romania, and he had residences in Romania and New Jersey. *Id*. ¶ 23.   Ciurez indicated on his USMLE exam applications that he attended the same medical school as Suliman in Romania, and he identified the same residential addresses as Suliman in Romania and New Jersey. *Id*.  ¶¶ 20, 24.  A number of other individuals who took the Step 1 and Step 2 CK of the USMLE at test centers in Romania and

Hungary also identified themselves as students or graduates of the same Romanian medical school, and listed the same New Jersey or Romanian addresses in their registration materials. *Id*. ¶ 24. Suliman clearly knew that his associates were engaged in direct copyright infringement, and they used his address on their exam applications.

These facts support the conclusion that Suliman and Optima knowingly induced, caused, and/or materially contributed to the direct infringement of USMLE examinations by test takers who were taking the USMLE exams in Romania and Hungary. Together, Defendants and these third parties comprised a ring of individuals engaged in coordinated infringement of Plaintiffs' test questions. Optima and Suliman are thus also liable as contributory infringers for these third-party infringements of Plaintiffs' copyrights.

## II.   PLAINTIFFS ARE ENTITLED TO DAMAGES, INJUNCTIVE RELIEF, ATTORNEY'S FEES AND COSTS.

### A.   Plaintiffs are Entitled To Maximum Statutory Damages.

The copyright owner may elect, at any time before final judgment, to recover, instead of actual damages and the defendant's profits, an award of statutory damages for all infringements for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally. 17 U.S.C. § 504(c)(1). Plaintiffs elect to recover statutory damages.

Statutory damages should ordinarily be awarded in a sum of not less than $750 or more than $30,000 per infringed work, as the court considers just. However, increased damages are warranted "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully." 17 U.S.C. § 504(c)(2). For willful infringements, a court may increase statutory damages to as much as $150,000 per infringed work. *Id*.

To prove willfulness, a plaintiff must show that the defendants had actual or constructive knowledge that they were infringing the plaintiff's copyright or else acted in reckless disregard of the high probability that they were infringing the plaintiff's copyright. *Zomba Enters., Inc. v. Panorama Records, Inc*., 491 F.3d 574, 584-85 (6th Cir. 2007). To refute evidence of willful infringement, a defendant must establish its good faith belief in the innocence of its conduct, and that it was reasonable in holding such a belief. *Id*.

Maximum statutory damages are warranted here because the Defendants knowingly and recklessly infringed on the NBME's and the Federation's copyrights. Suliman has registered to take the USMLE a dozen times. Dillon Decl. ¶ 23. Each time he was made aware by express warnings that copying or distribution of USMLE materials was prohibited. Dillon Decl. ¶ 9. Despite the same warnings, various third parties associated with Suliman and Optima were videotaped while taking screenshots of computer-administered USMLE exams. Their test scores and unusual answer patterns indicate they had registered for the exam for the sole purpose of copying the test questions. Dillon Dec. ¶¶ 19, 24. This is willful infringement. *See Mikaelian*, 571 F. Supp. at 150.

Optima's facilities in New Jersey were raided by the FBI in 2008 as part of a criminal investigation that is ongoing, yet Optima continued its infringing activities -- it merely moved its operations to Tennessee, where Suliman's public persona became "Dr. Sullivan." *See* Burgoyne Decl. Ex. 5. When Plaintiffs filed this civil action, Defendants repeatedly obstructed the Plaintiffs' investigation of their infringing activities, by refusing to give passwords or identify computer equipment, unplugging servers, erasing

hard drives, and otherwise defying the Court's Impoundment Order. *See* Tisdel Decl. ¶¶ 8-17, 21-32; Jimenez Decl. ¶¶ 12-15. The Defendants also put strict security measures in place to ensure the confidentiality of their materials, so that their infringing activity would not be revealed. *See* Dillon Decl. ¶¶ 26-27. These actions reflect knowing and willful conduct. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

The Copyright Act's scheme of statutory damages is "designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement." *Johnson v. Jones*, 149 F.3d 494, 504 (6th Cir. 1998); *Grad. Mgmt. Adm. Council v. Lei Shi*, 2008 WL 112047 (E.D. Va. 2008) (awarding statutory damages of $2,350,000, plus attorney's fees and costs, in civil judgment against Chinese national who operated an internet-based test preparation business relating to the GMAT exam, which is used by business schools in making admission decisions). Defendants' willful infringements, purposeful efforts to obstruct the investigation of their activities, disregard of the Court's authority, and baseless remarks imputing a lack of integrity to the Court, U.S. Marshals and the Plaintiffs, forcefully recommend an award of the maximum damages to deter such tactics in the future.

There is also an acute need for deterrence to protect the public welfare. Licensing boards and the general public rely on USMLE test results to accurately and fairly assess a candidate's qualifications for licensure. When test security is breached, as here, the integrity of the examination process is compromised, to the detriment of the licensing boards, the examinees who play by the rules, and the public at large. *Compare Nat'l Conf. of Bar Exam'rs,* 458 F. Supp. 2d at 262 ("Defendants' willful and egregious

copyright infringement harmed the public as well as the plaintiff.  States have a compelling interest in regulating admission to the bar both to maintain the integrity of the legal system and to protect the safety of their citizens.  By exposing its students to questions likely to appear on the MBE, [defendants] undermined the integrity of the bar examination, possibly causing the admission of unqualified applicants.  That the victims of this harm are impossible to identify and the injury impossible to quantify underscores the need to deter would-be copyright infringers."); *Nat'l Council of Examiners for Engineering & Surveying v. Cameron-Ortiz,* 626 F. Supp. 2d 262, 267 (D.P.R. 2009) (noting the "numerous interests" that are harmed "when an examinee, or prospective examinee, attempts to compromise a secure examination for his or her own benefit, or to improperly assist other examinees").

The Defendants have infringed sixteen (16) of Plaintiffs copyrighted works.  *See* Haist Decl. ¶ 9.  Based on the maximum statutory award of $150,000 per infringed work for willful infringement, the Court should grant damages in the amount of $2,400,000.  *See Raju*, 267 F. Supp. 2d at 511 (awarding $3,300,000 in statutory damages, the maximum permitted amount, plus attorney's fees and costs, for infringement of 22 test forms); *cf. Nat'l Conf. of Bar Exam'rs,* 458 F. Supp. 2d at 262 (awarding $11,902,787 based upon the Copyright Act's alternative measure of damages).

### B.     Injunctive Relief.

The Court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."   17 U.S.C. § 502(a).   "It is uncontroversial that a showing of past infringement and a substantial likelihood of future infringement justifies issuance of a permanent injunction." *Bridgeport Music v. Justin Combs*, 507 F.3d 470, 492 (6th Cir. 2007).  Indeed, "[w]hen a copyright plaintiff has

established a threat of continuing infringement, he is *entitled* to an injunction." *Id.* (quoting M. Nimmer & D. Nimmer, Nimmer on Copyright, § 14.06[B] (2007) ("Generally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement.")).

A permanent injunction is warranted here. *See Cameron-Ortiz*, 626 F. Supp. 2d at 269 (permanent injunction based on infringement of secure engineering licensing exam questions); *Raju*, 267 F. Supp. 2d at 512 (permanent injunction based on infringement of GMAT test questions). The Defendants' willful continuance of their infringing activities, in open defiance of the Court's orders, indicates a strong likelihood of ongoing infringement. *See* Dkts. 13, 33, 35, 39, 52, 66. Optima continues to operate its website and now offers, or soon will offer, internet-based USMLE programs; there can be little doubt these programs also use or will use infringing USMLE materials. *See* Ex. B hereto.

Plaintiffs are also entitled to an order for destruction of all infringing copies of USMLE materials in Defendants' custody or control. *See* 17 U.S.C. § 503(b).

C.      **Attorney's Fees and Costs.**

The Court has discretion to award the prevailing party costs and reasonable attorney's fees. 17 U.S.C. § 505. The award of attorney's fees is "the rule rather than the exception," and fees are awarded "routinely." *See Dice*, 488 F.3d at 362.

If attorney's fees and costs are granted, Plaintiffs will promptly document its reasonable fees and costs. *See Raju*, 267 F. Supp. 2d at 508 (awarding fees in an analogous case). A fee award is intended to compensate the plaintiff and deter similar conduct by others. *Cameron-Ortiz*, 626 F. Supp. 2d at 270 (giving weight to deterrence factor in awarding attorney's fee, and noting that defendant had "undermined the

licensing process in Puerto Rico for individuals who wish to perform engineering services, by videotaping NCEES's copyrighted examination materials").

## **CONCLUSION**

Defendants Suliman and Optima have engaged in willful and egregious copyright infringement.  The Court should grant summary judgment and award the NBME and the Federation statutory damages in the amount of $2,400,000, permanent injunctive relief, attorney's fees and costs, and all other relief to which the Court believes to be just and proper.

January 20th, 2011                              Respectfully submitted,


                                                 s/ Russell E. Reviere
                                                Russell E. Reviere, 7166
                                                Rainey, Kizer, Reviere & Bell, P.L.C.
                                                209 East Main Street
                                                P.O. Box 1147
                                                Jackson, TN 38301-1147
                                                (731) 423-2414
                                                rreviere@raineykizer.com

                                                Robert A. Burgoyne
                                                Caroline M. Mew
                                                FULBRIGHT & JAWORSKI L.L.P.
                                                801 Pennsylvania Avenue, NW
                                                Washington, DC  20004-2623
                                                (202) 662-0200
                                                Fax:  (202) 662-4643
                                                rburgoyne@fulbright.com
                                                cmew@fulbright.com

                                                *Counsel for Plaintiffs National Board of Medical Examiners and Federation of State Medical Boards*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served on the following via regular mail and this Court's ECF system:

Eihab Suliman
1774 Hwy 22
McKenzie, TN  38201

James H. Bradberry
P.O. Box 789
Dresden, TN 38225

This the 20th day of January, 2011.