UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

_____

NATIONAL BOARD OF MEDICAL  )
   EXAMINERS *et al.*,  )
                                                                                                                              )
                **Plaintiffs,**  )
   v.  )      **Civil Action No. 09-1043-JDB**
                                                  )
**OPTIMA UNIVERSITY LLC** *et al.*,  )
                                                  )
                **Defendants.**  )
_____)_____

### STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Loc. R. 7.2(d)(2), Plaintiffs provide below each material fact upon which the Plaintiffs rely in support of their Motion for Summary Judgment:

     1.     Defendant Eihab Suliman ("Suliman") is an individual who resides or may be found, or who resided or could otherwise be found at the outset of this litigation, in this District at his residence and/or place of business at 1774 Highway 22, McKenzie, Tennessee 38201.

     2.     Suliman is the President and owner of Optima University LLP ("Optima"), a Tennessee corporation located at 1774 Highway 22, McKenzie, Tennessee 38201.

     3.     Optima was incorporated in Tennessee in January 2008 and has regularly conducted business in this District, from premises located at 1774 Highway 22, McKenzie, Tennessee 38201. Optima previously operated from a location in Totowa, New Jersey.

85467573.1

4.      The National Board of Medical Examiners ("NBME") is a not-for-profit organization that provides assessment services for the health professions.

5.      The NBME's mission is to help protect the public through state-of-the-art assessment of the knowledge and skills of health professionals.

6.      The Federation of State Medical Boards (the "Federation") is a non-profit organization representing 70 state medical boards of the United States and its territories.

7.      The Federation's mission is to improve the quality, safety and integrity of health care through development and promotion of high standards for physician licensure and practice.

## I.    THE USMLE

8.      The NBME and the Federation own and sponsor the United States Medical Licensing Examination ("USMLE"), which is a standardized examination used to evaluate applicants' competence for medical licensure in the U.S. and its territories.

9.      The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.

10.     The USMLE is administered at locations around the world to individuals who are attending, or have attended, medical schools in the United States and abroad.

11.     State medical boards rely upon successful completion of the three USMLE component exams, or "Steps," as an important element in the process for licensing physicians.

12.     Step 1 assesses whether the examinee understands and can apply important concepts of the sciences basic to the practice of medicine. The Step 2 Clinical Knowledge examination (Step 2 CK) assesses whether the examinee can apply medical

knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision. Step 2 also includes a separate "Clinical Skills" component (Step 2 CS) in which examinees interact with surrogate patients. Step 3 of the USMLE assesses whether the examinee can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.

13. All three USMLE Step exams include multiple-choice questions, which are administered in a computer-based format.

14. The development of these multiple choice questions is time-consuming and expensive.

15. Plaintiffs are the sole owners of all right, title and interest in the copyrighted USMLE tests and test questions at issue in this lawsuit.

16. The USMLE test forms are original, copyrighted materials that Plaintiffs have registered with the U.S. Copyright Office in compliance with regulations adopted specifically to protect the confidentiality of "secure" tests.

17. The "TX" registration numbers assigned by the Copyright Office to the sets of computer-based questions that have been registered by the Plaintiffs include the following: TXu 1-256-037; TX 6-845-880; TXu 1-192-927; TXu 1-256-036; TX 6-468-136; TX 6-845-857; TX 6-419-276; TXu 1-256-031; TXu 1-256-030; TXu 1-256-025; TXu 953-854; TXu 1-111-542; TX 5-021-440; TXu 928-261; TX 4-838-008; TX 4-958-938. Each of these registration certificates corresponds to a set of copyrighted USMLE questions that have been the subject of the Defendants' infringing use.

18. The USMLE is a "secure" test, which means that the questions that appear on each exam are confidential and have not been previously disclosed by the Plaintiffs to the general public.

19. It is extremely important to maintain and protect the security of USMLE questions. As is common practice with standardized tests, the Plaintiffs reuse a certain number of the questions from each examination on subsequent examinations in order to "equate" examination scores from one test form to another. Because questions that appear on each version of a USMLE exam will also appear on future versions of the exam, they are not intended to be disclosed except during actual test administrations.

20. The unauthorized disclosure of secure test items compromises the integrity of the examination process. This has particular significance here, because state medical boards rely upon USMLE scores in licensing doctors.

21. The USMLE is an integral component of each state's effort to ensure that only competent and qualified individuals are licensed to practice medicine.

22. To help maintain the integrity of the examination process, the USMLE's "Bulletin of Information" expressly notifies prospective examinees that USMLE exam materials are confidential and copyrighted, and may not be reproduced, distributed, or disclosed. In relevant part, the Bulletin provides:

> **OWNERSHIP AND COPYRIGHT OF EXAMINATION MATERIALS**
>
> The examination materials used in the USMLE are copyrighted. If you reproduce and/or distribute any examination materials, by any means, including memorizing or reconstructing them, without explicit written permission, you are in violation of the rights of the owners.... [E]very legal means available to protect USMLE copyrighted materials and secure redress against those who violate copyright law may be pursued.

23. Examinees expressly agree to comply with "Rules of Conduct" that include agreements not to remove materials in any form, or to reproduce or disseminate information about the exam. These Rules of Conduct are set forth in the Bulletin of Information and include the following Rules:

> 7. You will not remove materials in any form (written, printed, recorded, or any other type) from the test center.
>
> 8. All examination materials remain the property of the USMLE parent organizations, and you will maintain the confidentiality of the materials, including the multiple-choice items.... You will not reproduce or attempt to reproduce examination materials through memorization or other means. Also, you will not provide information relating to examination content that may give or attempt to give unfair advantage to individuals who may be taking the examination. This includes [making] postings regarding examination content and/or answers on the Internet.

The Bulletin is found on the USMLE website and available to all examinees well in advance of their test date. When registrants apply to take any USMLE Step, the examinees are required to affirm that they have read and will comply with the Bulletin. They see a screen on the computer reminding them of the rules when they take the exam.

II.  **DEFENDANTS' UNLAWFUL CONDUCT**

24. In 2007, NBME discovered a series of unusual test results from individuals who took their USMLE exams in Bucharest, Romania and Budapest, Hungary. The low test scores and unusual answer patterns suggested that the individuals were taking the exams not in an effort to pass, but to gain access to exam content.

25. The video recordings of the testing sessions for these individuals showed them holding up a device near their computer screens to photograph or videotape examination questions.

26. One of these individuals, Marius-Antoniu Ciurez, took the USMLE at least six times and always failed.

27. On four of his USMLE applications, Ciurez listed an address in Elizabeth, New Jersey, as his residence, and on two other applications, he listed an address in Romania. Ciurez also reported attending a medical school in Romania.

28. Other individuals seen copying on the videotapes likewise took USMLE examinations in Romania or Hungary, scored very poorly, attended the same medical school, and listed the same New Jersey or Romanian addresses on their USMLE applications as Ciurez.

29. The Romanian medical school and residential addresses in New Jersey and Romania identified by Ciurez and the others are identical to those identified by Suliman, who is the president and co-owner of Optima.

30. Suliman registered to take USMLE exams twelve times, and he has taken components of the USMLE at least twice. Each time he had access to secure materials.

31. At no time were Suliman, Ciurez, or any other individuals authorized to videotape, copy, reproduce, publish, distribute copies of, disclose to third persons, display or prepare derivative works based on all or any portion of any USMLE examinations.

32. On the contrary, like all other USMLE examinees, they were given written notice that such activities were prohibited as part of each of their numerous applications to take the USMLE.

33. As part of its investigation into Optima's and Suliman's use of USMLE materials, NBME arranged for an individual ("X") to register for and attend the Optima USMLE test preparation program, which at the time was located in New Jersey.

34. X met Suliman, who introduced himself to X as Optima's president.

35. During X's time at Optima, X reviewed examination preparation material provided by Optima, virtually all of which was accessible only on an Optima computer.

36. X confirmed that at least fifty (50) questions or parts of questions displayed on the Optima network were identical, partially identical, or substantially similar to original, copyrighted, secure USMLE questions from the copyrighted Step 1 examination pool that NBME provided to X for use in the investigation.

37. Optima imposed rigorous security requirements on its customers with respect to accessing or printing copies of the Optima course materials.

38. In May 2008, the FBI raided Optima's New Jersey location after being alerted to the theft of USMLE questions at overseas locations and the use of secure USMLE questions in Optima's test preparation programs. The criminal investigation of Optima, Suliman, and others acting in concert with them is ongoing.

39. Later in 2008, Optima relocated to McKenzie, Tennessee.

40. On its website, Optima tells its customers that Optima enrollees have a passing rate of 99% and that they will have "[a]ccess to over 3,000 USMLE style questions." Nothing in the record indicates that the Defendants independently developed any of these questions themselves or otherwise lawfully obtained them.

41. As of 2009, Optima offered 12-, 7- and 4-week programs for individuals preparing for the USMLE, charging $6,950, $4,950 and $3,250 for the programs, respectively.

42. Pursuant to the Court's February 23, 2009 Impoundment Order, *see* Dkt. 21, U.S. Marshals and forensic investigators entered Optima's McKenzie, Tennessee

facility and found 10-12 rooms and sixty (60) or more computers, sleeping quarters, a number of students on the premises, and personal effects at most of the computer stations.

43. As forensic tests were being run and investigators were attempting to access course materials through Optima's website, the server that hosted the website abruptly shut down.

44. Suliman arrived at the facility shortly thereafter, leading one investigator to conclude that Suliman was notified of the visit and had shut the server down in response.

45. Suliman obstructed efforts to obtain information during the initial impoundment by failing to provide passwords or to identify computer relevant equipment.

46. Defendants' lack of cooperation and compliance with the Court's order resulted in a March 26, 2009 follow-up visit, agreed to by the Defendants and their counsel. Again, however, Defendants obstructed the efforts to impound materials.

47. Analysis of Defendants' records during and after the second impoundment revealed that Defendants affirmatively attempted to delete and/or transfer data and prevent retrieval.

48. Investigators concluded that specific steps had been taken to hide, relocate and prevent the viewing of data that at one time resided or continues to reside on Suliman's laptop computer or on one or more external sites owned or controlled by Suliman and/or Optima.

49. Notwithstanding Defendants' obstruction of the Plaintiff's impoundment efforts, Plaintiffs discovered among Optima's course materials handwritten notes that

reconstruct secure test questions from actual USMLE examinations; computer screen shots from actual USMLE examinations; and typed, virtually verbatim copies of secure USMLE questions.

50. The materials impounded from Optima also included computer screen shots of hundreds of non-secure, copyrighted USMLE questions that Plaintiffs make available to prospective examinees on USMLE's website.

51. Copyrighted secure and non-secure USMLE questions were found in the Optima materials.

52. The Plaintiffs filed their Complaint in this action on February 23, 2009. Defendants were properly served and appeared through counsel in certain contempt proceedings that were held in the case. Defendants have never filed an answer, however, or otherwise responded to the Plaintiffs' Complaint.

53. On October 16, 2009, after having held a hearing and giving the Defendants multiple opportunities to remedy their deficiencies, the Court entered an Order holding the Defendants in contempt for not complying with the Court's Impoundment Order of February 23, 2009. *See* Dkt. 56. This contempt Order required Defendants to take various actions, including reimbursing Plaintiffs for the additional expenses they incurred because of the contempt, and providing certain information to the Court and to the Plaintiffs. *Id.* The Defendants did not comply with any of the contempt Order's requirements.

54. On February 11, 2010, the Court entered a second contempt Order, directing that Suliman be arrested and held in jail until Defendants complied fully with

the Impoundment Order and the initial contempt Order. *See* Dkt. 60. Suliman has not been located by the local U.S. Marshals, however. He is believed to be in Egypt.

55. The Optima website has remained operational, at least periodically, and, when operating, it has listed Optima's address as being in McKenzie, Tennessee. *See* www.optimauniversity.com. As recently as May 4, 2010, the website stated that Optima will soon be offering internet-based USMLE exam preparation programs.

January 20th, 2011                                     Respectfully submitted,

                                             s/ Russell E. Reviere
Russell E. Reviere, 7166
Rainey, Kizer, Reviere & Bell, P.L.C.
209 East Main Street
P.O. Box 1147
Jackson, TN 38301-1147
(731) 423-2414
rreviere@raineykizer.com

Robert A. Burgoyne
Caroline M. Mew
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
(202) 662-0200
Fax: (202) 662-4643
rburgoyne@fulbright.com
cmew@fulbright.com

*Counsel for Plaintiffs National Board of Medical Examiners and Federation of State Medical Boards*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served on the following via regular mail and this Court's ECF system:

Eihab Suliman
1774 Hwy 22
McKenzie, TN  38201

James H. Bradberry
P.O. Box 789
Dresden, TN 38225

This the 20th day of January, 2011.