UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

NATIONAL BOARD OF MEDICAL )
EXAMINERS *et al.*, )
 )
      Plaintiffs, )
v. ) Civil Action No. 09-1043-JDB
 )
OPTIMA UNIVERSITY LLC *et al.*, )
 )
      Defendants. )

## DECLARATION OF DAVID JIMENEZ

I, David Jimenez, hereby state as follows:

1. My name is David Jimenez. I am more than twenty-one (21) years of age and, unless otherwise noted, I have personal knowledge of the facts stated herein.

2. I am an employee of Lateral Consulting Group. I was one of the computer forensic experts who assisted Plaintiffs in obtaining electronic data from Defendants at the premises of Optima University in McKenzie, Tennessee, on February 24, 2009, in accordance with the Court's Order of February 23, 2009.

3. We were tasked with locating and copying test questions and course materials on Defendants' premises.

4. We arrived at the premises at approximately 3:30 p.m. Upon arriving, we made a quick survey of what we were dealing with. We saw a lot of what appeared to be examination rooms, with about five computers in each room. I estimate that I saw 10-12 such rooms, with a total of 60 or more computers. Most, if not all, of the stations

seemed to contain individuals' personal items. We also saw a number of students on the premises.

5. We located what appeared to be the office of Defendant, Eihab Suliman. There was a computer on the desk and one or two extra computers that were non-operational. There were many hard drives and hundreds of CDs in his office. The CDs appeared to include copies of lectures. We made copies of a couple of these CDs.

6. We imaged external hard drives on Mr. Suliman's computer and on the disconnected computers located in a back room to the office.

7. Almost all of the test preparation and related materials that we were able to locate at Optima's premises were available exclusively in an electronic (rather than paper) format.

8. Some of the course materials that were available electronically, apparently for the use of students in the course, were accessible through an internet site: https://usmle.optima. The site appears to be hosted internally within Optima's network (but apparently not on a server that was located on site).

9. We attempted to use the tools available to us to determine where the off-site server was located for this internet site. The site shut down, however, while we were running our diagnostic tests. We do not know who shut it down or why it became inaccessible, but it is certainly something that could have been done remotely. Mr. Suliman had not yet arrived at the premises when the site was shut down, but I believe that he had been called and notified that we were on the premises by this time.

10. A person who I understood to be Mr. Suliman eventually arrived at the Optima premises while we were on site. He was asked by Plaintiffs' counsel where the

server was that launched and hosted the questions that were provided to Optima's customers on computers at the Optima premises. He indicated that the server was located overseas. He did not say where.

11. Based on the number of computers located on site (60 or more), I expected there to be one or more servers on site.

12. We eventually found three servers on site. All of the servers were password protected. If we had the passwords to the servers, we would have been able to see the data on the server in its natural form. Without passwords, we had to go in through the "back door" to see the data on the server in its raw form. Two of the servers did not appear to have the type of data we were looking for. The third server appeared to route internet traffic, and may have had the type of data we were looking for. The Defendant would not provide the password for this server. We therefore had to image the entire server, because we did not have enough time to look at the data in its raw form and decide if any of it was the type of data we were looking for. We also decided to image certain of the hard drives of the computers that seemed typical of the computers used by students in the course.

13. We tried to access Mr. Suliman's desk top computer. It also was encrypted. Mr. Suliman said that he did not know the password. We had to image the entire hard drive, because we could not determine what data was contained on the server.

14. We left the Optima premises at approximately 11:30 p.m.

15. Because Optima did not give us the necessary passwords or otherwise cooperate in our efforts to retrieve Optima's course materials in accordance with the

Court's order, we do not know whether we retrieved a complete set of Optima materials. It is unlikely that we did.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2009.

_____
David Jimenez