IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

NATIONAL BOARD OF MEDICAL
EXAMINERS, et al.,

     Plaintiffs,

v.                                    No.  1:09-cv-01043-JDB-cgc

OPTIMA UNIVERSITY LLC, et al.,

     Defendants.

---

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

On February 23, 2009, Plaintiffs, National Board of Medical Examiners ("NBME") and the Federation of State Medical Boards (the "Federation"), brought this copyright infringement action seeking damages and injunctive relief against Defendants, Optima University LLC ("Optima"), Eihab Mohamed Suliman, and John Does 1-10. The Plaintiffs allege that Optima, a test preparation company, and Suliman, its President and owner, violated the United States Copyright Act, 17 U.S.C. § 101 et seq., by using copyrighted questions from the United States Medical Licensing Examination ("USMLE") in their test preparation courses. NBME and the Federation have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Optima and Suliman, who have not responded. (Docket Entry ("D.E.") No. 62.) For the reasons stated herein, the Plaintiffs' motion is GRANTED.

## I.  FACTUAL BACKGROUND[1]

---

[1] The Local Rules of this Court require motions for summary judgment to "be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." LR 56.1(a), Local Rules of the United States District Court for the Western District of Tennessee. NBME and the Federation have complied with the Local Rules by submitting such a statement of facts. (D.E. No. 62-5.) Any party opposing summary judgment must respond to each fact stated by the movant. LR 56.1(b).  Under the Local Rules,

A.  The NBME, Federation, and USMLE

The NBME is a non-profit organization that aims to protect the public by assessing the knowledge and skills of health professionals. (Stmt. of Material Facts ¶¶ 4-5, D.E. No. 62-5.) The Federation, which is also not-for-profit, represents seventy state medical boards in the United States and its territories. (Id. at ¶ 6.) The mission of the Federation is to improve the quality, safety, and integrity of health care through developing and promoting high standards for physician licensure. (Id. at ¶ 7.) Together, NBME and the Federation own and sponsor the USMLE, a standardized examination used to evaluate applicants for medical licensure in the United States and its territories. (Id. at ¶ 8.)

The USMLE is administered to present and former medical school students at locations around the world. (Id. at ¶ 10.) It is designed to assess a physician's ability to apply knowledge, concepts, and principles, as well as demonstrate fundamental patient-centered skills, that are required for providing safe and effective patient care. (Id. at ¶ 9.) State medical boards require licensure applicants to successfully complete three USMLE component exams, or "Steps." (Id. at ¶ 11.) Step 1 assesses an examinee's understanding and application of scientific concepts that are basic to the practice of medicine. (Id. at ¶ 12.) Step 2's "Clinical Knowledge" examination tests an examinee's ability to apply the knowledge, skills, and understanding of clinical science that is essential to providing patient care under supervision. (Id.) Step 2 also includes a "Clinical Skills" component, which requires examinees to interact with surrogate patients. (Id.) Finally, Step 3

"[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d). Rule 56(e) of the Federal Rules of Civil Procedure also provides that if a party "fails to properly address another party's assertion of fact . . . , the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Because Optima and Suliman have not responded to the Plaintiffs' statement of material facts, the Court will consider them undisputed for the purposes of deciding their motion.

assesses an examinee's ability to apply the knowledge of medicine and biomedical and clinical science that is necessary for the unsupervised practice of medicine. (Id.)

The three USMLE examinations include multiple-choice questions, which are administered by computer. (Id. at ¶ 13.) The development of multiple choice questions is a time-consuming and expensive process. (Id. at ¶ 14.) The Plaintiffs own copyrights to USMLE tests and test questions and have registered USMLE test forms with the United States Copyright Office in compliance with the regulations adopted for protecting the confidentiality of "secure" tests.[2] (Id. at ¶¶ 15-17.) As a "secure" test, questions used on each USMLE are confidential and not disclosed to the public. (Id. at ¶ 18.) Plaintiffs reuse a certain number of questions from each examination on subsequent examinations in order to equate scores from one test form to another. (Id. at ¶ 19.) Accordingly, USMLE questions are intended to be disclosed only during actual test administrations and the unauthorized disclosure of those questions compromises the integrity of the examination. (Id. at ¶¶ 19-20.)

To aid in ensuring the USMLE's confidentiality, the test's "Bulletin of Information" advises prospective examinees that exam materials are confidential and copyrighted and may not be reproduced, distributed, or disclosed. (Id. at ¶ 22.) It provides:

### OWNERSHIP AND COPYRIGHT OF EXAMINATION MATERIALS

The examination materials used in the USMLE are copyrighted. If you reproduce and/or distribute any examination materials, by any means, including memorizing or reconstructing them, without explicit written permission, you are in violation of the rights of the owners . . . . [E]very legal means available to protect USMLE

---

[2] The U.S. Copyright Office has assigned the following "TX" registration numbers to question sets registered by Plaintiffs: TXu 1-256-037; TX 6-845-880; TXu 1-192-927; TXu 1-256-036; TX 6-468-136; TX 6-845-857; TX 6-419-276; TXu 1-256-031; TXu 1-256-030; TXu 1-256-025; TXu 953-854; TXu 1-111-542; TX 5-021-440; TXu 928-261; TX 4-838-008; TX 4-958-938. (Stmt. of Material Facts ¶ 17, D.E. No. 62-5.) Each number corresponds to a copyrighted USMLE question set that has been the subject of Defendants' infringing use. (Id.)

> copyrighted materials and secure redress against those who violate
> copyright law may be pursued.

(Id.) The Bulletin of Information also includes "Rules of Conduct" with which each examinee must expressly agree to comply. (Id. at ¶ 23.) The Rules of Conduct include the following:

> 7.      You will not remove materials in any form (written, printed, recorded, or any other type) from the test center.
>
> 8.      All examination materials remain the property of the USMLE parent organizations, and you will maintain the confidentiality of the materials, including the multiple-choice items. . . . You will not reproduce or attempt to reproduce examination materials through memorization or other means. Also, you will not provide information relating to examination content that may give or attempt to give unfair advantage to individuals who may be taking the examination. This includes [making] postings regarding examination content and/or answers on the Internet.

(Id.) The Bulletin is accessible on the USMLE website and available to all examinees in advance of their test date. (Id.) When registering for the examination, registrants must affirm that they have read the Bulletin and will comply with its terms. (Id.) Examinees are also reminded of the rules on the computer screen when taking the exam. (Id.)

## B.  Suliman, Optima, and Defendants' Unlawful Conduct

Suliman is the President and owner of Optima, a company offering USMLE test preparation courses. (Id. at ¶ 2.) Optima was incorporated under the laws of Tennessee in 2008 and has regularly conducted business within this judicial district from its address at 1774 Highway 22, McKenzie, Tennessee 38201. (Id. at ¶ 3.) It previously operated out of Totowa, New Jersey. (Id.) As of 2009, Optima offered 12-, 7-, and 4-week USMLE preparation courses, charging $6,950, $4,950, and $3,250, respectively. (Id. at ¶ 41.) Optima's website touts that its enrollees have "[a]ccess to over 3,000 USMLE style questions" and have passed the USMLE at a rate of 99%. (Id. at ¶ 40.)

In 2007, the Defendants became targets of an NBME investigation into a confidentiality breach of USMLE examination questions. During that year, NBME discovered a series of low test scores and unusual answer patterns from individuals taking the USMLE exams in Bucharest, Romania, and Budapest, Hungary. (Id. at ¶ 24.) The pattern of results suggested that individuals in those locations were taking the exams to gain access to secure exam content rather than for the purpose of passing and earning medical licensure. (Id.) The NBME reviewed video recordings of the suspicious testing sessions, which revealed the suspected individuals holding a device near the computer screen to photograph or record the examination questions. (Id. at ¶ 25.)

One suspect, Marius-Antoniu Ciurez, took the USMLE at least six times and failed on each attempt. (Id. at ¶ 26.) On four of his applications, Ciurez provided an address in Elizabeth, New Jersey. (Id. at ¶ 27.) On two others, he listed an address in Romania where he also reported attending a medical school. (Id.)  Like Ciurez, other individuals who were seen recording the examination took the USMLE in either Romania or Hungary and scored very poorly. (Id. at ¶ 28.) They also listed attendance at the same medical school in Romania and the same New Jersey or Romanian address on their USMLE application. (Id.)

Suliman himself had registered for the USMLE twelve times and taken components of the exam at least twice. (Id. at ¶ 30.)  Each time, he had access to secure testing materials. (Id.) The Defendant identified the same Romanian medical school and residential address in New Jersey and Romania as Ciurez and the other suspected individuals. (Id. at ¶ 29.)

During its investigation of Suliman and Optima, NBME arranged for an individual ("X") to register for and attend Optima's test preparation program, which was located in New Jersey at the time. (Id. at ¶ 33.) X met Suliman, who introduced himself as Optima's President. (Id. at ¶ 34.)  While attending the program, X reviewed course materials designed for USMLE

preparation. (Id. at ¶ 35.) Those materials were accessible only on an Optima computer, and Optima imposed strict security requirements on students who accessed or printed them. (Id. at ¶¶ 35, 37.) X's review of the materials confirmed that at least fifty questions or parts of questions displayed on the Optima network were identical, partially identical, or substantially similar to copyrighted, secure USMLE questions from the Step 1 examination pool. (Id. at ¶ 36.)

In May 2008, the Federal Bureau of Investigation raided Optima's facility in New Jersey after being informed of the theft of USMLE questions at oversees locations and Optima's use of secure USMLE questions in its test preparation materials.[3] (Id. at ¶ 38.) Following the FBI raid, Optima relocated to McKenzie, Tennessee, where it operated through 2009. (Id. at ¶ 39.) On February 23, 2009, NBME and the Federation filed this civil lawsuit against the Defendants, alleging that their use of the copyrighted test questions in their test preparation course materials was copyright infringement. (D.E. No. 1.) That same day, the Court granted an ex parte motion of the Plaintiffs directing the United States Marshal Service to seize and impound a copy of all USMLE-related questions and course materials used by Defendants. (D.E. No. 21.) Pursuant to the Court's order, Plaintiffs, with the assistance of the United States Marshals and two computer forensic investigators, entered Optima's McKenzie, Tennessee facility. (Stmt. of Material Facts ¶ 42, D.E. No. 62-5.) A number of students were found inside, as well as ten to twelve rooms, sixty or more computers with personal effects at most computer stations, and sleeping quarters. (Id.) As the investigators were running forensic tests on the computers and attempting to access course materials though Optima's website, the server that hosted the website was shut down. (Id. at ¶ 43.) Suliman arrived at the facility soon thereafter, leading one investigator to conclude that

_____

[3] Suliman and his former wife, Egija Kuka, who is also an owner of Optima, have since been indicted in the United States District Court for the District of New Jersey on one count of conspiracy to commit mail and wire fraud and five counts of mail and wire fraud, violations of 18 U.S.C. §§ 1341, 1343, 1349 and 2. (See D.E. No. 63-1.) The actions underlying the indictment against Suliman and Kuka appear to be the same conduct giving rise to this suit.

he was notified of their arrival and shut the server down in response. (Id. at ¶ 44.) Suliman also

failed to provide passwords or to identify relevant computer equipment. (Id. at ¶ 45.)

Due to Defendants' obstruction and lack of compliance with the Court's impoundment

order, Plaintiffs made a second visit to Optima's facility on March 26, 2009. (Id. at ¶ 46.)

However, Defendants again interfered with efforts to seize copies of their course materials. (Id.)

An analysis of Defendants' records during and after the impoundment revealed that Plaintiffs'

had attempted to delete and/or transfer data and preclude its retrieval. (Id. at ¶ 47.) Investigators

also discovered that efforts had been undertaken to hide, relocate, and prevent the viewing of

information on Suliman's laptop computer and at external sites owned or controlled by Suliman

and Optima.[4] (Id. at ¶ 48.)

Despite those concealment efforts, Plaintiffs found among Optima's course materials

handwritten notes reconstructing secure questions from actual USMLE examinations, typed,

verbatim copies of secure USMLE questions, and computer screen shots from actual USMLE

examinations. (Id. at ¶ 49.) Also discovered were computer screen shots of hundreds of non-

secure, copyrighted USMLE questions that Plaintiffs made available to prospective exam-takers

on the USMLE website. (Id. at ¶ 50.)

On January 20, 2011, NBME and the Federation moved for summary judgment on their

copyright infringement claims. (D.E. No. 62.) Plaintiffs argue that Defendants' infringement was

willful, thereby warranting an award of $2,400,000 in statutory damages pursuant to 17 U.S.C. §

504(c). Plaintiffs also seek an order pursuant to 17 U.S.C. § 502 permanently enjoining

---

[4] On October 16, 2009, the Court held Defendants in contempt of Court for failing to comply with its impoundment order. (D.E. No. 56.) The Court again directed Defendants to make available to Plaintiffs all materials that were within the scope of the impoundment order and ordered Defendants to reimburse Plaintiffs for additional costs they incurred due to Defendants' refusal to comply with the Court's orders. When the Defendants did not follow the contempt order, the Court again held Defendants in contempt and directed the United States Marshal Service to issue a warrant for Suliman's arrest and incarceration until such time as he complied with the Court's orders. (D.E. No. 60.) The Marshal Service has never located Suliman, however, and information provided by the Plaintiffs suggests that he is currently in Egypt.

Defendants from further infringing on copyrighted USMLE materials, as well as requiring Defendants to produce all copyrighted materials in the possession of Plaintiffs for destruction as authorized by 17 U.S.C. § 503. Finally, Plaintiffs seek the costs and attorney's fees that they have incurred in prosecuting this action pursuant to 17 U.S.C. § 505. The Defendants have never responded to Plaintiffs' motion.

## II.  LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that

> [a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a "scintilla of evidence" and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "The judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

When the non-moving party has not responded to a motion for summary judgment, the Court may not grant the motion based solely on the non-movant's failure to respond. Miller v. Shore Fin. Servs., Inc., 141 F. App'x 417, 419 (6th Cir. 2005) (per curiam); Stough v. Mayville Cmty. Sch., 138 F.3d 612, 614 (6th Cir. 1998); Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991). Rule 56 still requires the movant to demonstrate that there is no genuine dispute as to the material facts and that it is entitled to judgment as a matter of law. Miller, 141 F. App'x at 419. Thus, the Court must consider the merits of Plaintiffs' motion to determine whether they have satisfied the summary judgment standard. Id.

## III. ANALYSIS

A. Defendants' Liability for Copyright Infringement

To prevail in this action for copyright infringement, NBME and the Federation must establish (1) that they own the copyright to USMLE question sets and (2) that Optima and Suliman copied those questions. See R.C. Olmstead, Inc. v. CU Interface, LLC, 606 F.3d 262, 274 (6th Cir.), reh'g & reh'g en banc denied (June 23, 2010); Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir.), reh'g & reh'g en banc denied (July 21, 2003). Liability for copyright infringement may stem from either direct or contributory infringement. "[D]irect infringement arises from the violation of any one of the exclusive rights of a copyright owner." Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir.) (citing 17 U.S.C. § 501(a)), reh'g denied (Aug. 30, 2004). Contributory infringement, on the other hand, occurs when one has knowledge that another is engaging in infringing activity and "induces, causes or materially contributes" to

that activity. Id. (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). In this case, Plaintiffs assert that Defendants are both directly and contributorily liable.

1. Ownership

NBME and the Federation submit that they held ownership of sixteen copyrighted works of which the Defendants infringed. (Decl. of Steven Haist ¶ 9, D.E. No. 62-10.) Plaintiffs have presented copies of sixteen copyright registration certificates that were issued to them by the United States Copyright Office and purportedly contain one or more questions copied by Defendants. See supra p. 3 note 2. (Ex. 6 to Haist Decl., D.E. No. 62-10.) "[The] filing of a certificate of registration creates a rebuttable presumption of the validity of a copyright and of the facts contained in the ownership certificate." Mid-South Inst. of Self Def. Shooting, Inc. v. Habermehl, No. 98-6528, 2000 WL 924598, at *3 (6th Cir. June 26, 2000) (per curiam) (citing Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc., 58 F.3d 1093, 1095 (6th Cir. 1995); 17 U.S.C. § 410(c)); BancTraining Video Sys. v. First Am. Corp., No. 91-5340, 1992 WL 42345, at *3 (6th Cir. Mar. 3, 1992) (per curiam) (citing 17 U.S.C. § 410(c)). Defendants have the burden of rebutting this presumption, Habermehl, 2000 WL 924598, at *3, which they have not done. Thus, the registration certificates issued to Plaintiffs are sufficient to establish their ownership to valid copyrights for the test questions at issue.

2. Copying

The Plaintiffs next must establish that Defendants copied the protected creation, which they may prove by presenting either direct or indirect evidence. R.C. Olmstead, 606 F.3d at 274. "Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness accounts of the physical act of copying, and common errors in the works of

10

plaintiffs and the defendants." Rottlund Co. v. Pinnacle Corp., 452 F.3d 726, 732 (8th Cir. 2006).

Indirect evidence may be presented through a showing of "(1) access to the allegedly-infringed

work by the defendant(s) and (2) a substantial similarity between the two works at issue." Ellis v.

Diffie, 177 F.3d 503, 506 (6th Cir. 1999). NBME and the Federation contend that they have

presented both direct and indirect evidence of copying. The Court agrees.

i.   Direct Evidence

This appears to be one of the few cases where direct evidence of copying is available.

USMLE testing sites are videotaped for security purposes. (Decl. of Gerard F. Dillon ¶ 19, D.E.

No. 62-6.) Gerard F. Dillon, Ph.D., Vice President of the USMLE, states that Plaintiffs reviewed

the videotapes of several examinees who recorded abnormal answer patterns and unusually low

test scores.[5] (Id. at ¶¶ 19, 22.) Those tapes revealed the individuals holding a recording device to

the computer screen in an attempt to scan or photograph the test's questions and answer choices.[6]

(Id.) See Routland Co., 452 F.3d at 732 ("Direct evidence of copying . . . includes evidence such

as . . . witness accounts of the physical act of copying . . . ."). Additionally, impounded materials

from Optima's facility included handwritten notes reconstructing secure test questions and

computer screen shots from actual examinations. (Haist Decl. ¶ 6, D.E. No. 62-10; Ex. 1-3 to

Haist Decl., D.E. No. 62-10.) See Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies,

Inc., 458 F. Supp. 2d 252, 256 (E.D. Pa. 2006) (direct evidence of copying included defendants'

handwritten notes "about the fact patterns, prompts, and answer choices appearing on MBE

examinations that they have taken"). Also among those materials were wholesale copies of non-

---

[5] For example, Dillon states one such test taker, Marius-Antoniu Ciurez, answered "A" for eighty-two
percent of the multiple choice questions on Step 1 of the USMLE. (Dillon Decl. ¶ 18, D.E. No. 62-6.)

[6] As the Court will discuss in its analysis of Defendants' contributory infringement liability, Plaintiffs have
presented proof to connect these individuals to Suliman and Optima. See infra Part III.A.3.

secure, copyrighted questions that the Plaintiffs provide on the USMLE website. (Ex. 5 to Haist Decl., D.E. No. 62-10.)

        ii.    Indirect Evidence

The Court also finds that the Plaintiffs have presented uncontested, indirect evidence of copying. The first element of indirect evidence, access, "merely means an opportunity to view the protected material." Robert R. Jones Assocs., Inc. v. Nino Homes, 858 F.2d 274, 277 (6th Cir.), reh'g denied (Nov. 7, 1998). Plaintiffs may prove access by simply showing that Defendants had "'a reasonable opportunity to [view] [their] work and thus ha[d] the opportunity to copy.'" Stromback v. New Line Cinema, 384 F.3d 283, 293 (6th Cir. 2004) (quoting Ellis, 177 F.3d at 506). NBME and the Federation have done so here. Suliman personally completed Step 1 of the USMLE in 2004 and Step 2 in 2005. (Dillon Decl. ¶ 24, D.E. No. 62-6.) Other third parties who appear to be connected to Suliman, including Ciurez, also took portions of the USMLE. (Id. at ¶¶ 19-22.) Ciurez attempted Step 1 on three occasions and Step 2 on three occasions; he failed each time. (Id. at ¶ 20.) When taking the exams, Suliman and his associates had the opportunity to view secure USMLE material. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 256 (owner and employees of bar exam preparation course had access to secure test questions when personally taking multi-state bar exam); Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) ("Defendants obtained access to ETS's copyrighted MSAT forms and questions through students who had recently taken the test and voluntarily provided this information."); Ass'n of Am. Med. Colls. v. Mikaelian, 571 F. Supp. 144, 150 (E.D. Pa. 1983) (defendant had access to MCAT questions because he took the exam on at least eight occasions). Additionally, Defendants had access to the non-secure USMLE questions because they are available on the exam's website. (Dillon Decl. ¶ 8, D.E. No. 62-6.)

The second requirement for indirectly proving copyright infringement is "substantial similarity" between the copyrighted and infringing works. Ellis, 177 F.3d at 506. The Sixth Circuit follows a two-step approach for evaluating substantial similarity, which "asks what aspects of the copyrighted work, if any, are protected," and "whether the second work involves elements that are substantially similar to the protected elements of the original work." R.C. Olmstead, 606 F.3d at 274-75 (citing Kohus, 328 F.3d at 855).

The uncontested facts supporting Plaintiffs' motion evidence substantial similarity between a number of copyrighted USMLE questions and Optima's course materials. During the Plaintiffs' investigation into Suliman and Optima, they arranged for an individual to enroll in and attend Defendants' test preparation program. (Dillon Decl. ¶ 26, D.E. No. 62-6.) That individual identified at least fifty questions or portions thereof in Optima's course preparation materials that were alike or quite similar to secure, copyrighted questions from the USMLE Step 1 question pool. (Id. at ¶ 26b.) NBME and the Federation also have provided the declaration of Steven Haist, Associate Vice President of Test Development Services for the NBME. (Haist Decl., D.E. No. 62-10.) Haist states that he was responsible for comparing materials obtained from Suliman and Optima with copyrighted, USMLE questions and found questions that were "substantially similar, and in many cases identical." (Id. at ¶¶ 4-5.) Attached to Haist's declaration, Plaintiffs have submitted material founds in the possession of Defendants including handwritten notes that reconstruct secure test questions from a USMLE examination (Ex. 1 to Haist Decl., D.E. No. 62-10), typed questions that are verbatim to secure USMLE questions (Ex. 2 to Haist Decl., D.E. No. 62-10), and computer screen shots from actual USMLE examinations (Ex. 3 to Haist Decl., D.E. No. 62-10). NBME and the Federation also provided a side-by-side comparison of eleven questions found in Optima's course materials that are identical or almost identical to secure,

copyrighted USMLE questions. (Ex. 4 to Haist Decl., D.E. No. 62-10). The Court has reviewed each of those questions and finds that they are substantially similar. Each USMLE question contains a distinctive image or diagram, which was copied or recreated by the Defendants.

The Court also finds that the substantially similar aspects of the copyrighted works are protectable. See Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., No. 05 Civ. 8665(GEL), 2008 WL 4449412, at *5-7 (S.D.N.Y. Sept. 30, 2008) (scope of copyright protection extends to test questions); Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 259 (recognizing protectable nature of multiple-choice bar examination questions and finding infringement based on test preparation company's use of "the same fact patterns, prompts, and answer-choice combinations found in MBE questions"). Suliman and Optima did not simply attempt to test the same scientific and medical principles as the USMLE. They copied the USMLE's exact questions and methods of assessing an examinee's knowledge of science and medicine.

### 3.   Contributory Infringement

NBME and the Federation also contend that Defendants are liable for contributory infringement of their copyrighted test questions. "One infringes contributorily by intentionally inducing or encouraging direct infringement . . . ." Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). For Plaintiffs to prevail under this theory, the undisputed material facts must show that Defendants had knowledge of the third party's infringing activity and "induce[d], cause[d], or materially contribute[d]" to that conduct. Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d at 621 (quoting Gershwin Publ'g Corp., 443 F.2d at 1162).

Although the motivation of Ciurez and others to aid in Suliman's unlawful activity is not readily apparent, the facts presented do suggest that Suliman knowingly induced or encouraged

14

multiple individuals to take USMLE examinations, copy the secure test questions and forward those questions to him for use in Optima's course materials. Each individual discovered to have recorded USMLE questions listed the same Romanian medical school and residential addresses in Romania and New Jersey on their USMLE applications as Suliman. (Stmt. of Material Facts ¶¶ 24-29, D.E. No. 62-5; Dillon Decl. ¶¶ 18-25, D.E. No. 62-6.) The examinees' low test scores and abnormal answer patterns also suggest that they were taking the USMLE in order to gain access to secure test questions rather than to pass the exam for medical licensure. (Stmt. of Material Facts ¶ 24, D.E. No. 62-5.) A subsequent search of Optima's premises then revealed computer screen shots from actual UMSLE examinations, presumably those taken by the third parties in question. (Stmt. of Material Facts ¶ 49, D.E. No. 62-5.)

These undisputed material facts suggest that Suliman and the examinees that were discovered recording USMLE testing sessions acted in concert to infringe Plaintiffs' copyrighted materials. The facts establish a connection between those individuals and Suliman and place the fruits of their labor in the Defendants' possession. Accordingly, the Court also finds that the Defendants are liable as contributory infringers.

B.  Plaintiffs' Remedies

Having established Optima and Suliman's liability for copyright infringement, the Court must turn to the remedies available to Plaintiffs under the Copyright Act, 17 U.S.C. §§ 502 to 505. NBME and the Federation seek statutory damages, a permanent injunction prohibiting further infringement, the impoundment and destruction of the infringing materials, and their incurred costs and attorney's fees.

1.   Statutory Damages

Under 17 U.S.C. § 504, the copyright owner may elect to recover either (1) its actual damages and any additional profits of the infringing party, or (2) statutory damages. 17 U.S.C. § 504(a); see also Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 358 (6th Cir. 2007) ("A plaintiff may seek either actual damages or statutory damages for copyright infringement."). NBME and the Federation have opted to pursue statutory damages under section 504(c), which states in pertinent part that

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If the copyright owner proves that the infringement was willful, the Court may increase the award of statutory damages up to $150,000. 17 U.S.C. § 504(c)(2). Statutory damages must be awarded for each infringement, and it is within the district court's broad discretion to award any amount of statutory damages between the minimum and maximum limits set by the Act. Digital Filing Sys., L.L.C. v. Aditya Int'l, 323 F. App'x 407, 412 (6th Cir. 2009) (citing Wildlife Internationale, Inc. v. Clements, No. 84-3828, 84-3834, 1985 WL 14088, at *2 (6th Cir. Dec. 3, 1985) (per curiam)). "Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement." Johnson v. Jones, 149 F.3d 494, 504 (6th Cir. 1998) (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952)).

The acts of Suliman and Optima were clearly willful. An infringer acts willfully when he knows that his conduct constitutes copyright infringement or acts with reckless disregard of that

fact. <u>Zomba Enters., Inc. v. Panorama Records, Inc.</u>, 491 F.3d 574, 584-85 (6th Cir. 2007), <u>cert. denied</u>, 553 U.S. 1032, 128 S. Ct. 2429, 171 L. Ed. 2d 229 (2008); <u>King Records, Inc. v. Bennett</u>, 438 F. Supp. 2d 812, 860 (M.D. Tenn. 2006). Suliman, as the owner of a USMLE preparation course company, either knew or acted in reckless disregard of the fact that USMLE questions were copyrighted and reproducing them was unlawful. Additionally, Suliman had registered for the USMLE twelve times and taken Steps 1 and 2. (Dillon Decl. ¶ 24, D.E. No. 62-6.) When registering, Suliman was required to affirm that he had read and would comply with the USMLE's Bulletin of Information, including its confidentiality requirement and prohibition against reproducing or providing information related to exam content. (<u>Id.</u> at ¶¶ 9-10.) Further, the Court finds evidence of Defendants' willfulness from their refusal to obey the Court's impoundment order. Defendants' efforts to operate surreptitiously and obstruct the investigation into their use of copyrighted USMLE material reflect a reckless disregard for the Plaintiffs' property rights.

NBME and the Federation seek the maximum statutory damages of $2,400,000 ($150,000 for each of the 16 copyrighted works), and the Court finds that such an award is appropriate. Maximum statutory damages will compensate Plaintiffs' for the harm they have suffered, promote the integrity of the USMLE, and serve as a strong deterrent to Optima and Suliman from future infringing behavior. Plaintiffs are thus AWARDED statutory damages of $2,400,000 pursuant to 17 U.S.C. § 504(c).

2.  Injunctive Relief

Plaintiffs next seek a permanent injunction against Defendants pursuant to 17 U.S.C. § 502, which authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "'It

17

is uncontroversial that a 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction.'" Bridgeport Music, Inc. v. Justin Combs Publ'g, 507 F.3d 470, 492 (6th Cir. 2007) (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007)), cert. denied, 555 U.S. 818, 129 S. Ct. 85, 172 L. Ed. 2d 29 (2008; see also Digital Filing Sys., 323 F. App'x at 420 ("Permanent injunctions are granted where liability is determined and a continuing threat to a copyright exists.").

The Court finds that permanent injunctive relief is warranted here. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 262 (awarding injunctive relief under similar circumstances); Graduate Mgmt. Admission Council v. Raju, 267 F. Supp. 2d 505, 507, 512 (E.D. Va. 2003) (same). As discussed above, Plaintiffs have established that Optima and Suliman infringed upon copyrighted USMLE questions, see supra Part III.A, and the Court finds a substantial threat that they will continue to do so in the future. For twelve months, the Defendants operated in willful violation of this Court's order permitting Plaintiffs to impound a copy of all USMLE-type questions and course materials used by Defendants in their test preparation programs. (See D.E. Nos. 21, 56, 58, 60.) The Court has twice held Suliman in contempt and issued a warrant for his arrest. (See D.E. Nos. 56, 60.) However, the Defendant has managed to avoid capture by the United States Marshals. The Defendants' willful ignorance of orders of this Court and disregard for the intellectual property rights of the Plaintiffs suggests a substantial likelihood they will infringe upon Plaintiffs' copyrights in the future. See Collins v. Whitt, No. 3:04CV-646-H, 2006 WL 2457926, at *2 (W.D. Ky. Aug. 18, 2006) (defendant's disregard for plaintiff's rights and failure to participate in lawsuit or follow orders of court justified permanent injunction).

Accordingly, pursuant to 17 U.S.C. § 502 and Fed. R. Civ. P. 65(d), Optima, Suliman, their employees, and their agents are PERMANENTLY ENJOINED from infringing in any manner with the Plaintiff's copyrights by copying, duplicating, distributing, posting, displaying, advertising, selling, adapting, publishing, reproducing, preparing derivative works based on, renting, leasing, offering or otherwise transferring or communicating in any manner, including but not limited to any publication on the internet, or communication to any agent, representative, employee, member, person or affiliate, or in written or downloadable electronic materials, any test questions or answers that are identical or substantially similar to actual, copyrighted test questions or answers from any USMLE or to any other copyrighted USMLE material, or aiding, abetting, enabling, or authorizing any other person to do the same.  Defendants, their employees, and agents are also PERMANENTLY ENJOINED from taking any USMLEs for any purpose other than to satisfy a requirement of a medical school for advancement or to obtain a license to practice medicine. Finally, Defendants are PERMANENTLY ENJOINED from attempting to subvert any USMLE by aiding or abetting others in the infringement of any copyrighted USMLE materials.

> 3.   Destruction of Infringing Material

Pursuant to 17 U.S.C. § 503(b), the Defendants are also ORDERED to provide to Plaintiffs' counsel for destruction within thirty (30) days of the entry of this order all copies of all documents, in paper or electronic format, that are in Defendants' possession or control and that include any copyrighted USMLE materials, including but not limited to test questions and answers.

4.   Attorney's Fees and Costs

Lastly, Plaintiffs seek to recover all costs incurred in prosecuting this action, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505. Section 505 of the Copyright Act grants discretion to the Court to award costs and reasonable attorney's fees to the prevailing party in a copyright infringement action. 17 U.S.C. § 505. Although they are not automatic, the Sixth Circuit has recognized that "[t]he grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely.'" Bridgeport Music, Inc. v. WB Music Corp., 520 F.3d 588, 592 (6th Cir. 2008) (quoting Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 380 (5th Cir. 2004)); see also Thoroughbred Software, 488 F.3d at 362 ("[Attorney's fees] are awarded routinely.").   The Court must consider "four non-exclusive factors to determine whether to award attorney's fees in a copyright action: 'frivolousness of the claim, motivation, reasonableness, and deterrence.'" Thoroughbred Software, 488 F.3d at 361 (quoting Coles v. Wonder, 283 F.3d 798, 804 (6th Cir. 2002)).

The Court has considered those factors and finds an award of attorney's fees and costs is appropriate. The Defendants have willfully infringed upon the Plaintiffs' copyrights and disregarded directives issued by this Court to protect those rights. Optima and Suliman have not put on any defense of the merits, but rather sought to avoid liability by destroying evidence of their wrongdoing. The first three factors—frivolousness, motivation, and objective unreasonableness—weigh in favor of Plaintiffs. See Controversy Music v. Packard Grill, LLC, No. 10-cv-12015, 2011 WL 317736, at *5 (E.D. Mich. Feb. 1, 2011) (finding that attorney's fees were warranted where defendants put on no defense and admitted liability); Broadcast Music, Inc. v. Marler, No. 1:09-cv-193, 2009 WL 3785878, at *6 (E.D. Tenn. Nov. 12, 2009) (awarding fees and costs where infringements were willful, defendants were warned that its actions were

unlawful, and they put on no defense on the merits). Finally, the need to deter conduct such as that of Optima and Suliman is vital. USMLE scores are relied upon by state medical boards when licensing doctors. The disclosure of secure, copyrighted test questions undermines the integrity of the USMLE and presents the threat that persons without the skill and knowledge required to practice medicine will be licensed as a doctor. See Nat'l Conference of Bar Exam'rs, 458 F. Supp. 2d at 262 ("By exposing its students to questions likely to appear on the MBE, PMBR undermined the integrity of the bar examination, possibly causing the admission of unqualified applicants.").

Accordingly, the Plaintiffs are hereby AWARDED costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505. Plaintiffs are directed to submit to the Court proof of their costs and attorney's fees within thirty (30) days of the entry of this order.

## IV. CONCLUSION

In summary, the Court holds that Defendants, Suliman and Optima, directly and contributorily infringed upon the copyrighted USMLE questions of the NBME and Federation. Plaintiffs are awarded maximum statutory damages of $2,400,000, as well as attorney's fees and costs, which they shall document within thirty (30) days. Defendants are permanently enjoined from engaging in further infringing activity and shall provide any copyrighted USMLE materials in their possession or control to Plaintiffs' counsel within thirty (30) days for its destruction. The Clerk of Court is directed to enter judgment in favor of the Plaintiffs.

IT IS SO ORDERED this 29th day of September, 2011.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE